[Cite as *Polen v. Heaston*, 2016-Ohio-7508.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JON C. POLEN | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | Hon. William B. Hoffman, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2016AP020011 |
| CATHY HEASTON EXEC., ET AL. | |
| Defendants-Appellees | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Tuscarawas County Court
                            of Common Pleas, Case No.
                            2010CV040531


JUDGMENT:                   Affirmed

DATE OF JUDGMENT ENTRY:     October 21, 2016

APPEARANCES:

For Appellant -                     For Appellees -
Jon. C. Polen, Executor             Cathy Heaston, Daniel Polen,
of the Estate of Robert Polen       Martha Bethel

J. KEVIN LUNDHOLM                   JEFFREY T. KENNEY
Kyler, Pringle, Lundholm            Droder & Miller Co., L.P.A.
& Durmann, L.P.A.                   125 West Central Parkway
405 Chauncey Avenue, N.W.           Cincinnati, Ohio 45202
P.O. Box 668
New Philadelphia, Ohio 44663


For Appellant –                     For Appellee –
Jon C. Polen                        Dean W. Polen, Jr.

DAVID K. SCHAFFNER                  JOSHUA E. O'FARRELL
Schaffner Law Offices Co., L.P.A.   Tzangas, Plakas, Mannos, Ltd.
132 Fair Avenue NW                  220 Market Avenue, 8th Floor
New Philadelphia, Ohio 44663        Canton, Ohio 44702

For Appellees
James Polen and Rodney Polen

JAMES L. NICHELSON
P.O. Box 97
Martins Ferry, Ohio 43945

*Hoffman, J.*

**{¶1}** Plaintiff-appellant Jon C. Polen appeals the January 15, 2016 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, which granted, in part, his motion to show cause, finding defendant-appellee Dean Polen in contempt for failing to provide certain information pursuant to the September 19, 2012 Agreed Entry between the parties, but denied, in part, the remaining branches of his motion. Daniel Polen, Cathy Heaston, and Martha Bethel are also defendants-appellees.

STATEMENT OF THE FACTS AND CASE

**{¶2}** On December 18, 1984, Robert C. Polen ("Decedent") established the Polen Land Trust ("the Trust") pursuant to the laws of the state of Florida. The Trust assets include coal interests and oil and gas interests located in Ohio, and West Virginia. The parties are the grandchildren of Decedent and are the beneficiaries of the Trust.

**{¶3}** On April 10, 2010, Appellant filed the instant action against his brothers, James Polen, Rodney Polen and Robert Polen,[1] and his cousins, Appellees Dean Polen, Daniel Polen, Cathy Heaston, and Martha Bethel, alleging wrongdoing with respect to the Trust. James Polen and Appellee Dean Polen were co-trustees at the time of the filing of the lawsuit. Robert Polen died during the pendency of the action. Appellant was named Executor of Robert Polen's estate.

**{¶4}** On September 19, 2012, the parties entered into an Agreed Entry. Pursuant to Paragraph 4 of the Agreed Entry, the parties agreed:

---

[1] James Polen and Rodney Polen are not parties to this appeal. Robert Polen died during the pendency of the underlying action.

[A]ny and all interests in coal and coal mining rights owned by the Polen Land Trust, or jointly owned by the Robert C. Polen Trust, the Robert C. Polen heirs, the Dean W. Polen heirs, or any other person or entity, consisting of approximately 3,265 acres in Ohio and all acreage in West Virginia, shall be marketed for immediate sale within 120 days of the signing of this Agreement. An independent coal expert shall select a coal broker. The proceeds of said sale shall be divided as stated below. Jon Polen[,] Dean and James Polen, with the assistance of his/their counsel, shall communicate with the said independent coal expert and the coal broker and present all offers to the individuals and entities stated below The independent coal expert's recommendations as to price shall be followed. Sale or sales shall proceed upon agreement of a majority of the persons and entities stated below. All parties agree that the sale of the coal rights will be subordinate to and not interfere with the marketing of the gas and oil interests. Net funds realized from said sale(s) shall be distributed as follows:

a. 12.5% to Dean W. Polen, Jr.

b. 12.5% to Daniel Polen

c. 12.5% to Martha Bethels [sic]

d. 12.5% to Cathy Heaston

e. 10% to the Estate of Robert Polen

f. 10% to Jon Polen

g. 10% to Rodney Polen

h. 10% to James Polen

i. 10% to J.P. Morgan Chase, as Trustee of the Robert C. Polen Trust

**{¶5}** Paragraph 7 of the Agreed Entry provides:

All remaining unleased parcels of gas and oil interests in Ohio owned by the Polen Land Trust and listed on the "Acreage Not Leased" schedule prepared by Diversified Engineering showing 447.28 acres that are not presently under lease shall:

a. Be marketed by Jon Polen, with the assistance of his counsel, for lease. Said properties shall be leased within 120 days of the signing of this agreement. In the event that the properties are not leased, this time period will be extended for an additional 90 days if Jon Polen, through counsel, shows that he is in negotiations with lessees.

b. After payment of the initial 10% of the proceeds of said leases to J.P. Morgan Chase, as Trustee of the Robert C. Polen Trust, all bonus and royalty payments resulting from such remaining gas and oil interests shall be divided as follows:

i. 20% to Dean W. Polen, Jr., Daniel Polen, Martha Bethels [sic], Cathy Heaston, James Polen, and Rodney Polen

ii. 30% to the Estate of Robert M. Polen

iii. 50% to Jon Polen

iv. James Polen and Rodney Polen waive any claims they may have in the said Estate of Robert M. Polen to any funds realized by said Estate under this Paragraph 7.

**{¶6}** Paragraph 8 of the Agreed Entry states:

The parties agree, upon the sale of the coal interests hereunder, the Polen Land Trust shall be dissolved and any funds remaining shall be divided by the Trust to the individuals and entities as stated at Paragraph 4, herein.

**{¶7}** Paragraph 9 of the Agreed Entry reads:

Said Polen Land Trust shall assign all interests in and royalties from currently extant mineral leases to the individuals and entities as stated at Paragraph 4, herein.

**{¶8}** On December 18, 2014, Appellant, individually and as Executor of the Estate of his brother, Robert M. Polen, filed a motion to show cause against Appellee Dean W. Polen, Jr.; Appellee Martha Bethel; Appellee Daniel Polen; Appellee Cathy Heaston; James Polen; and Rodney Polen. Appellant asserted the following allegations:

(1) Defendant Dean Polen failed to retain an independent coal expert and a coal broker to market the coal interest of the Polen Land Trust, as ordered in paragraph 4 of the Agreement;

(2) Defendant Dean Polen failed to provide the other beneficiaries of the Polen Land Trust with information relating to the Pleasants County, West Virginia leases and any property leased to the Cameron Drilling Company, as ordered in paragraph 6 of the Agreement;

(3) Defendant Dean Polen intentionally and tortiously, interfered with the efforts of Jon Polen to market the oil and gas interests held by the Polen Land Trust, as he was directed to do in paragraph 7 of the Agreement;

(4) Defendants, Dean Polen and James Polen, resigned from their positions as successor co-trustees in order to circumvent the court order set forth in paragraph 8 of the Agreement, that the Polen Land Trust be dissolved only upon the sale of all the Polen Land Trust coal interests;

(5) Defendants, Dean Polen and James Polen, signed a lease for Polen Land Trust oil and gas interests with Chesapeake Exploration, LLC after their resignations; and

(6) Upon information and belief, Defendants caused the holdings of the Polen Land Trust to be dispersed in violation of the percentages due each beneficiary under paragraph 7(b) of the Settlement Agreement.

{¶9} The trial court conducted a hearing on Appellant's motion on August 7, 2015. At the conclusion of the hearing, the trial court ordered the parties to submit written

closing arguments.  Via Judgment Entry filed January 15, 2016, the trial court granted, in part, Appellant's motion to show cause as against Appellee Dean Polen with respect to the second branch of the motion, finding Appellee Dean Polen in contempt for failing to provide the other beneficiaries of the Trust information regarding the Pleasants County, West Virginia leases as well as any property leased to Cameron Drilling Company pursuant to Paragraph 6 of the Agreed Entry.  The trial court denied the remaining branches of the motion as against Appellee Dean Polen.  The trial court denied the motion in its entirety as against Appellees Daniel Polen, Cathy Heaston, and Martha Bethel.

{¶10}  It is from the January 15, 2016 Judgment Entry Appellant appeals, raising as his sole assignment of error:

{¶11}  THE TRIAL COURT ERRED IN GRANTING ONLY A SINGLE BRANCH OF THE MOTION TO SHOW CAUSE BECAUSE THE APPELLANT PRESENTED CLEAR AND CONVINCING EVIDENCE OF SIX SPECIFIC VIOLATIONS OF THE AGREED ENTRY SETTLING CASE, FILED SEPTEMBER 19, 2012.

*Civil Contempt*

{¶12}  The standard of proof in a civil contempt proceeding is clear and convincing evidence. *Brown v. Executive 200, Inc.* (1980)*,* 64 Ohio St.2d 250, 253 416 N.E.2d 610. "Clear and convincing evidence" is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954)*,* 161 Ohio St. 469, paragraph three of the syllabus. The determination of whether clear and convincing evidence exists is within the discretion of the trier of fact. *Brown,* supra.

**{¶13}** In addition, our standard of reviewing a court's judgment in a contempt proceeding is whether the trial court abused its discretion. *Hout v. Hout,* 5th Dist. No.2007–CA–111, 2008–Ohio–2684, citing *State ex rel. Celebrezze v. Gibbs* (1991)*,* 60 Ohio St.3d 69, 573 N.E.2d 62. An abuse of discretion implies the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983)*,* 5 Ohio St.3d 217, 450 N.E.2d 1140.

I

**{¶14}** In his sole assignment of error, Appellant contends the trial court erred in only granting one of the six branches of his motion to show cause.  Specifically, Appellant asserts the trial court abused its discretion in finding Appellee Dean Polen made a good faith attempt to retain an independent coal expert and coal broker; in failing to find Appellee Dean Polen intentionally and tortiously interfered with Appellant's efforts to market the oil and gas interests held by the Trust; in failing to find Appellee Dean Polen and James Polen resigned their positions as co-trustees in order to circumvent paragraph 8 of the Agreed Entry; in not finding Appellee Dean Polen and James Polen in contempt for signing a lease on behalf of the Trust with Chesapeake Exploration after their resignations; and in not finding the holdings of the Trust were dispersed in violation of paragraph 7(a) of the Agreed Entry.

**{¶15}** We address each of the five branches in turn.

*Failure to Retain Coal Expert and Coal Broker*

{¶16} Appellant asserts the trial court abused its discretion in finding Appellee Dean Polen made a good faith attempt to retain an independent coal expert and coal broker as required under Paragraph 4 of the Agreed Entry.

{¶17} Pursuant to Paragraph 4 of the Agreed Entry, the coal interests owned by the Trust were to be marketed for immediate sale within 120 days of the signing of the Agreed Entry. To facilitate the sale, an independent coal expert was to be retained. The coal expert would, in turn, select a coal broker. The Agreed Entry is silent as to whom was responsible for retaining the coal expert.

{¶18} The trial court made the following Findings of Fact:

11. Although not required to do so by the Agreed Entry, Dean Polen verbally agreed to lead the effort to sell the coal interests owned by the Polen Land Trust because he had more experience with the coal industry.

12. Dean Polen made efforts to retain a coal expert; however, none of the parties actually retained a coal expert or coal broker.

13. The coal experts that Dean Polen spoke with informed him that any offers they would receive would be very low. Based upon his contacts, Dean Polen learned that the coal market was not good, and it would be

difficult to market the coal at that time.  Dean Polen did not realize how bad the market was at the time that the parties entered into the Agreed Entry.

14. In the process of marketing the coal, Dean Polen received an offer from Rosebud for deep coal for $75,000.00 for 2 million tons of coal. Rosebud also offered Dean Polen $1 per ton with an estimated 1 million recoverable tons, which would have equaled $1 million dollars.  Dean Polen sent a letter to the beneficiaries; however, there was not a unanimous reply from the beneficiaries to Rosebud.  The lease would have been entered into individually because part of the coal interest was owned by the trust and the other portions were owned individually by the parties.  Because the relevant interest was not owned entirely by the trust, and Rosebud did not receive a response from the other owners, Rosebud did not enter into a lease for the coal.  Jon Polen objected to the lease and complained to Dean Polen that the percentages were not as provided for in the Agreed Entry.

January 15, 2016 Judgment Entry at 13-14.

{¶19} The trial court concluded Appellee Dean Polen should not be found in contempt and he had made a good faith attempt to retain an independent coal expert and coal broker to market the coal interest of the Trust.

{¶20} We find the evidence supports the trial court's conclusions. Although Appellee Dean Polen verbally agreed to lead the effort to sell the coal interests owned by the Trust, he was not solely charged with that duty pursuant to Paragraph 4 of the Agreed Entry. The duty was to be shared by the parties. While Appellee Dean Polen was unsuccessful in his attempts to retain a coal expert, he secured an offer worth over one million dollars from Rosebud for the coal interests. The offer, however, was not unanimously approved by the beneficiaries, and the deal never came to fruition.

{¶21} Based upon the foregoing, we find the trial court did not abuse its discretion in not finding Appellee Dean Polen guilty of contempt on the first branch of Appellant's motion to show cause.

*Intentional and Tortious Interference*

{¶22} Appellant contends the trial court abused its discretion in failing to find Appellee Dean Polen intentionally and tortiously interfered with Appellant's efforts to market the oil and gas interests held by the Trust as required by Paragraph 7 of the Agreed Entry.

{¶23} Paragraph 7 of the Agreed Entry authorized Appellant to market "[a]ll remaining unleased parcels of gas and oil interests in Ohio owned by the Polen Land Trust and listed on the "Acreage Not Leased" schedule prepared by Diversified Engineering showing 447.28 acres that are not presently under lease." The Agreed Entry

provided: "Said properties shall be leased within 120 days of the signing of this agreement. In the event that the properties are not leased, this time period will be extended for an additional 90 days if Jon Polen, through counsel, shows that he is in negotiations with lessees."

**{¶24}** The trial court made the following findings:

16. At the time that the Agreed Entry was entered into, Dean Polen and James Polen did not believe that there were over 400 acres of unleased acreage owned by the Polen Land Trust. In 2010, Dean Polen attempted to lease all of the trust acreage to Chesapeake. Chesapeake did title work in 2010 on the acreage owned by the trust. Based upon the results of Chesapeake's title work, Dean Polen and James Polen did not believe that the trust owned any more acreage or that there was very little acreage left to lease.

17. However, Jon Polen relied upon his belief that unleased acres remained, and he would not have entered into the Agree Entry if he knew that the trust did not own these acres.

18. Pursuant to the terms of paragraph 7(a) of the Agreed Entry, Jon Polen had until January 17, 2013 to market and lease any unleased parcels of gas and oil interests in Ohio owned by the Polen Land Trust and listed on the "Acreage Not Leased" schedule prepared by Diversified Engineering. If the properties were not leased but Jon Polen was in

negotiations with lessees by January 17, 2013, Jon Polen could request until April 17, 2013 to market and lease the subject properties.

19. Jon Polen met Gavin Calloway in 2012. Jon Polen agreed to pay him a percentage out of the bonus that Jon Polen would receive if a lease were signed. Gavin Calloway spent over a year working with Jon Polen to get the assets leased.

20. Jon Polen had not obtained a lease by January 17, 2013, and Jon Polen was not in negotiations with an oil and gas company on January 17, 2013. Jon Polen did not request an extension beyond January 17, 2013 because he was not in negotiations. Jon Polen acknowledged that noone [sic] interfered with his right to market any potential oil and gas interests during the 120 day period.

21. However, in December of 2013, Gavin Calloway, on behalf of Jon Polen, received an offer of $7,500.00 per acre with a 20 percent royalty from AEP. AEP sent a blank sample lease for discussion purposes so that proposed changes could be made. After receiving a copy of the blank lease from AEP, Dean Polen contacted Gavin Calloway and told him that he did not believe that the assets were available to be leased, and therefore, he would not be able to sign a lease. Dean Polen and James Polen never received a lease from AEP that contained the negotiated terms of the lease.

22. Dean Polen would not sign the lease because he believed that only a few acres were owned by the trust and available for lease. Dean

Polen was advised by legal counsel that he should not sign the leases if he believed that the trust did not own the interests. * * *

23. The Polen Land Trust never entered into a lease with AEP.

24. In the Fall of 2013, Dean Polen also met with someone from Paloma Partners in St. Clairesville regarding a potential lease of the subject acres. He also communicated to the Paloma Partners' representative that he did not believe that the Trust owned the mineral rights on these acres that he would be willing to lease any unleased acreage if they owned it. However, Dean Polen never heard anything else from Paloma Partners.

25. Although Dean Polen did not believe that the trust owned additional unleased acreage, he would have been willing to let Jon Polen market any existing interests pursuant to the Agreed Entry.

26. None of the parties presented the Court with any evidence to suggest that a title search was performed on the approximately 447 acres at issue. Therefore, it is unclear whether the Polen Land Trust actually owns these interests. Additionally, none of the parties know if AEP would have ultimately paid on the potential lease because it is unclear whether the Polen Land Trust owns the mineral rights for the relevant acres.

January 15, 2016 Judgment Entry at 14-17.

**{¶25}** "The elements of the tort of tortious interference with contract are (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden,* 85 Ohio St.3d 171, 1999-Ohio-260, 707 N.E.2d 853, paragraph one of the syllabus. "Establishment of the fourth element of the tort of tortious interference with contract, lack of justification, requires proof that the defendant's interference with another's contract was improper." *Id.* at paragraph two of the syllabus.

**{¶26}** The tort of intentional interference with contract occurs "when a person, without a privilege to do so, induces or otherwise purposely causes a third person * * * not to perform a contract with another." *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council,* 73 Ohio St.3d 1, 14, 651 N.E.2d 1283 (1995). As stated earlier, the Ohio Supreme Court has adopted "Section 767 of the Restatement, which provides guidelines to be followed in determining whether an actor's interference with another's contract is improper." *Siegel,* supra 178. "The issue in each case is whether the interference is improper or not under the circumstances, [and] whether * * * the conduct should be permitted without liability, despite its effect of harm to another." *Id.* at 176. Accordingly, a court determining whether an actor's interference with a contract was improper or "privileged" should consider the following factors:

the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the

interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

*Id.* at 176.

**{¶27}** The trial court concluded Appellant did not prove by clear and convincing evidence Dean Polen intentionally and/or tortiously interfered with his efforts to market the oil and gas interests held by the Trust pursuant to Paragraph 7 of the Agreed Entry. We agree.

**{¶28}** Appellant's right to market any unleased oil and gas interests expired on January 17, 2013, 120 days from the execution of the Agreed Entry. The time period could be extended for an additional 90 days "if Jon Polen, through counsel, shows that he is in negotiations with lessees." Appellant acknowledged he was unsuccessful in obtaining a lease within the 120 day marketing period, and did not seek a 90 day extension as he was not in negotiations with lessees. Appellant also admitted no one, including Appellee Dean Polen, interfered with his right to market the oil and gas interests during the 120 day marketing period. Because a contract did not exist, Appellee Dean Polen could neither intentionally nor tortiously interfere with such.

**{¶29}** Appellant also complains Appellee Dean Polen intentionally and tortiously interfered with his efforts to lease the Trust assets subsequent to January 17, 2013. Appellant points to two instances which he submits establish his claim.

{¶30} First, in the fall of 2013, Appellee Dean Polen met with Paloma Partners at Appellant's request regarding a potential lease of the subject acres. He communicated to the Paloma Partners' representative he did not believe the Trust owned the mineral rights on these acres, but would be willing to lease any unleased acreage the Trust did, in fact, own. Next, in December, 2013, Gavin Calloway, on behalf of Appellant, received an offer from AEP. AEP sent a blank sample lease for discussion purposes. After Appellee Dean Polen received the blank sample, he contacted Calloway and told him (Calloway) he did not believe the assets were available to be leased; therefore, he would not be able to sign a lease. Appellee Dean Polen never received a lease from AEP which contained any negotiated terms.

{¶31} Assuming, arguendo, Appellee's expressing concern regarding the Trust's ownership of the acreage and/or ability to lease the acreage to potential lessees constitutes interference, we find such interference was outside the time period within which Appellant was authorized to market the assets.

{¶32} As a component of his claim Appellee Dean Polen intentionally and tortiously interfered with Appellant's efforts to market the oil and gas interests, Appellant asserts Appellee Dean Polen admitted to fraud. Appellant submits Appellee Dean Polen did so by acknowledging he signed the Agreed Entry, which stated the Trust owned 447.28 unleased acres in Ohio, when he did not believe the Trust actually owned the land and/or mineral interests associated with the land. Having already concluded Appellee

Dean Polen did not intentionally or tortiously interfere with Appellant's efforts during the time period outlined in paragraph 7 of the Agreed Entry, we find this assertion unpersuasive.

{¶33} Based upon the forgoing, we find the trial court did not abuse its discretion in failing to find Appellee Dean Pollen in contempt for intentional and tortious interference with Appellant's right to market certain oil and gas interests held by the Trust.

*Appellee Dean Polen and James Polen's Resignations as Co-Trustees*

{¶34} Appellant next asserts the trial court abused its discretion in failing to find Appellee Dean Polen in contempt for resigning his position, as did James Polen, as successor co-trustee of the Trust in order to circumvent Paragraph 8 of the Agreed Entry.

{¶35} Pursuant to Paragraph 8 of the Agreed Entry, upon the sale of the coal interests, the Trust would be dissolved and any funds remaining would be divided by the Trust to the individuals and entities as stated at Paragraph 4.

{¶36} After attempts to lease or sell the coal interests proved unsuccessful, Appellee Dean Polen and James Polen contacted Florida Attorney Jess Diner. Attorney Diner reviewed the Trust, the Agreed Entry, and applicable Florida law, and advised Appellee Dean Polen and James Polen they had the right to resign their positions. Appellee Dean Polen and James Polen resigned their positions as co-trustee in the fall of 2014. They provided written notice of their resignations to the beneficiaries. Pursuant

to the terms of the Trust, the appointment of a successor trustee required the unanimous consent of the beneficiaries. Neither Appellant nor any of the other beneficiaries sought appointment as the successor trustee. Due to the lack of willingness of any of the beneficiaries to serve as successor trustee, the Trust was dissolved in accordance with Florida law.

{¶37} The Agreed Entry does not include a provision for the resignation of the co-trustees or the appointment of a successor trustee. The Agreed Entry does not prevent the co-trustees from resigning, or, alternatively, require them to indefinitely remain in their positions. Further, the Agreed Entry does not provide for the possibility the coal interests would not be leased or sold within the timeframe specified. In addition, the Trust permits the trustee to resign "at any time". Based upon the foregoing, we find the trial court did not abuse its discretion in failing to find Appellee Dean Polen in contempt for resigning his position.

*Lease with Chesapeake Exploration, LLC*

{¶38} Appellant submits the trial court abused its discretion in finding the Agreed Entry did not prohibit Appellee Dean Polen and James Polen from executing a lease on behalf of the Trust subsequent to their resignations as co-trustees. Appellant explains Appellee Dean Polen and James Polen executed the lease with Chesapeake Exploration, unilaterally, and without his knowledge or consent. Appellant claims the transaction included some of the same acreage Appellee Dean Polen previously stated was

unavailable for leasing, and, as a result, the Trust received only $5,000.00, rather than the $7,500.00/acre, an offer which Appellee Dean Polen had rejected. Appellant concludes the co-trustees disregarded their obligations to the beneficiaries.

**{¶39}** In its Findings of Fact, the trial court noted:

28.  After his resignation, Dean Polen signed a contingency lease with Chesapeake on behalf of the trust, which included approximately 86 acres.  Although Dean Polen did not believe that the Polen Land Trust owned these mineral rights, the contingency lease would cover the acreage in case a Court would later find that the Polen Land Trust owned the mineral rights on those properties.  Dean Polen entered the contingency lease on behalf of the trust in order to protect other oil and gas interests of the Polen Land Trust.

29. Dean Polen sought the consent of his fellow beneficiaries before entering into the contingency lease, but he did not receive consent from Jon Polen.  Jon Polen objected to the Chesapeake contingency lease because he felt that he should have received a higher percentage, that he should have been involved in the negotiations, and because there had previously been a higher offer involving the same acreage.

30. After their resignations, Dean Polen and James Polen signed several deeds and documents, and distributed assets pursuant to the Trust. The 86 acres were not dispersed because the successor co-trustees did not

believe that those were currently owned by the trust; and therefore, there was nothing to disperse.

January 15, 2016 Judgment Entry at 17-18.

**{¶40}** The trial court found Appellee Dean Polen and James Polen did not sign the contingency lease with Chesapeake until after Appellant's right to market and lease any unleased gas and oil interests had expired. The trial court further found, because nothing in the Agreed Entry prevented the successor co-trustees from entering into the contingency lease, Appellee Dean Polen and James Polen did not violate the Agreed Entry.

**{¶41}** We agree with the trial court. Nothing in the Agreed Entry prevented Appellee Dean Polen from executing a contingency lease. Accordingly, we find the trial court did not abuse its discretion in not finding Appellee Dean Polen in contempt for signing the contingency lease.

*Disbursement of Trust Assets*

**{¶42}** Appellant posits the trial court abused its discretion in failing to find Appellee Dean Polen and James Polen in contempt for violating the Agreed Entry relative to the disbursement of Trust assets. Specifically, Appellant claims the trial court abused its discretion in finding Paragraph 7(b) of the Agreed Entry does not exist independent of Paragraph 7(a).

**{¶43}** When the Trust was dissolved, a final accounting was prepared at the direction of Attorney Diner and filed with the trial court. None of the beneficiaries of the Trust objected to the final accounting either in Ohio or in Florida.

**{¶44}** As set forth, supra, Paragraph 7 of the Agreed Entry provides:

All remaining unleased parcels of gas and oil interests in Ohio owned by the Polen Land Trust and listed on the "Acreage Not Leased" schedule prepared by Diversified Engineering showing 447.28 acres that are not presently under lease shall:

a. Be marketed by Jon Polen, with the assistance of his counsel, for lease. Said properties shall be leased within 120 days of the signing of this agreement. In the event that the properties are not leased, this time period will be extended for an additional 90 days if Jon Polen, through counsel, shows that he is in negotiations with lessees.

b. After payment of the initial 10% of the proceeds of said leases to J.P. Morgan Chase, as Trustee of the Robert C. Polen Trust, all bonus and royalty payments resulting from such remaining gas and oil interests shall be divided as follows:

i. 20% to Dean W. Polen, Jr., Daniel Polen, Martha Bethels [sic], Cathy Heaston, James Polen, and Rodney Polen

ii. 30% to the Estate of Robert M. Polen

iii. 50% to Jon Polen

iv. James Polen and Rodney Polen waive any claims they may have in the said Estate of Robert M. Polen to any funds realized by said Estate under this Paragraph 7.

**{¶45}** Paragraph 7(b) clearly applies to the distribution of any bonuses and royalty payments received as a result of any oil and gas leases executed during the time frame contemplated in Paragraph 7(a). We find no other way to interpret this provision. The manner in which the assets were to be distributed upon termination of the Trust is not contemplated in the Agreed Entry. Further, the Trust has its own distribution terms. Appellant did not object to the distribution made pursuant to the Trust.

**{¶46}** We find the trial court did not abuse its discretion in failing to find Appellant Dean Polen and James Polen in contempt for violating the Agreed Entry relative to the disbursement of Trust assets.

**{¶47}** The judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By: Hoffman, J.

Gwin, P.J. and

Baldwin, J. concur