[Cite as *Meek v. Geneva*, 2017-Ohio-7975.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| KEVIN MEEK, ET AL. | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2017 AP 01 0001 |
| | : | |
| SAMUEL GENEVA, ET AL. | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Tuscarawas County
Court of Common Pleas, Case Nos.
1996 CT 09 0390, 1996 CT 09 0391

JUDGMENT: REVERSED AND REMANDED

DATE OF JUDGMENT ENTRY: September 27, 2017

APPEARANCES:

For Appellee:

BRETT M. MANCINO
75 Public Square, Suite 1016
Cleveland, OH 44113

For Plaintiffs:

JOSEPH I. TRIPODI
114 East High Avenue
New Philadelphia, OH 44663

For Appellant:

RALPH F. DUBLIKAR
400 South Main St.
North Canton, OH 44620

BRAD L. HILLYER
201 N. Main St.
P.O. Box 272
Uhrichsville, OH 44683

*Delaney, P.J.*

{¶1} Appellant, James Weaver, Executor of the Estate of Samuel Geneva appeals the December 9, 2016 judgment entry of the Tuscarawas County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

### The Accident and Criminal Conviction

{¶2} On August 1, 1994, Samuel Geneva was operating his motor vehicle in Tuscarawas County, Ohio, while under the influence of alcohol. His vehicle travelled left of center and struck a motor vehicle driven by Helen Lucille Meek. Kevin Meek and Jeremy Belt were passengers in Ms. Meek's vehicle at the time of the collision. Ms. Meek sustained massive injuries and died from those injuries. Kevin Meek and Jeremy Belt suffered multiple injuries, but survived the collision.

{¶3} A jury convicted Geneva of aggravated vehicular homicide and aggravated vehicular assault on February 1, 1995. The trial court sentenced Geneva to eight to thirteen years in prison.

### The Civil Proceedings, Part One

{¶4} In September 1996, Kevin Meek and Jeremy Belt filed complaints in the Tuscarawas County Court of Common Pleas requesting an award of compensatory and punitive damages against Geneva. Appellee, attorney Paul Mancino, Jr. represented Geneva in the tort action.

{¶5} On September 17, 1997, the trial court granted summary judgment in favor of Meek and Belt, finding Geneva liable for negligently and recklessly causing physical harm to Meek and Belt. The amount of damages was left to be determined.

{¶6}   On February 11, 1999, Meek and Belt filed a motion to enjoin Geneva, or anyone acting on his behalf, from removing funds during the pendency of the tort action. The trial court issued an ex parte restraining order on February 12, 1999. The matter came on for a full hearing on February 18, 1999. At the hearing, the following facts were adduced.

{¶7}   Geneva was the owner of a checking account held at the First National Bank of Dennison, Ohio. Geneva had given a power of attorney to Appellant, James Weaver, who maintained the checking account. On January 20, 1999, Geneva directed Weaver by typewritten correspondence to withdraw the balance of the checking account and forward it to Geneva's attorney, Mancino. In the letter directing the withdrawal of the balance of the account, there was a handwritten request to Weaver that he forward the amount of $37,500 to Mancino "or you will be removed from my account as my Power of Attorney." Weaver received a handwritten letter from Geneva, which indicated it was the intention of Geneva to hide his assets during the tort litigation. Weaver followed Geneva's instructions, withdrew $37,500 from the checking account, and sent a cashier's check to Mancino, payable to Mancino.

{¶8}   The trial court issued a judgment entry on February 24, 1999 that found Geneva's request for transfer of funds was intended to hinder or defraud the creditors. The trial court restrained Geneva and Weaver from moving, removing, spending, or otherwise disposing of funds in his possession, held in Geneva's or otherwise held on Geneva's behalf until further order of the trial court. The trial court ordered:

It is further ORDERED that the funds transferred to Attorney Paul Mancino,

Jr. in the amount of $37,500.00 be **attached** and that the Defendant,

Samuel Geneva, **return said funds to be deposited in Account No. 144696 of The First National Bank of Dennison on or before the 12th day of March, 1999**.

It is further ORDERED that **the Defendant, Samuel Geneva, his agents and The First National Bank of Dennison may not remove or permit the removal of funds from any account held in the name of or for the benefit of Samuel Geneva until further order of this Court**.

(Emphasis sic.) (Judgment Entry, Feb. 24, 1999).

{¶9}  Mancino filed a notice of appeal of the February 24, 1999 judgment entry with this court. We dismissed the appeal on July 22, 1999 for lack of a final appealable order.

{¶10} On April 20, 1999, the trial court held a hearing on the issue of damages. Mancino represented Geneva at the hearing.

{¶11} On May 5, 1999, Geneva granted Mancino a power of attorney, making Mancino his attorney-in-fact. Geneva removed Weaver as his power of attorney.

{¶12} The trial court issued its judgment entry on May 28, 1999 awarding damages in favor of Meek and Belt. The trial court awarded $362,500 in compensatory damages to Meek, $257,500 in compensatory damages to Belt, $100,000 in punitive damages to Meek, and $100,000 in punitive damages to Belt.

{¶13} In the May 28, 1999 judgment entry, the trial court specifically incorporated the February 24, 1999 judgment entry, which included the provision ordering Geneva to return the $37,500 transferred to Mancino to the First National Bank of Dennison. The trial court stated that "[u]pon information received at trial, this Court FINDS that the funds

in the amount of Thirty-seven Thousand Five Hundred Dollars ($37,500.00) have not been returned as ordered to The First National Bank of Dennison. Attorney Paul Mancino, Jr., represented to the Court that the funds remain in his trust account in Cleveland, Ohio." (Judgment Entry, May 28, 1999). The trial court ordered that the February 24, 1999 judgment entry be incorporated by reference and the orders on the restraint of funds remained in full force and effect until further order of the trial court.

{¶14} Geneva did not appeal the May 28, 1999 judgment entry.

## The Probate Proceedings

{¶15} Geneva died on December 7, 2014. An estate was opened for Geneva on February 4, 2015 and Weaver was appointed Executor of his estate. On August 26, 2015, Belt and Meek as judgment creditors of Geneva filed claims against the estate totaling over $820,000. *In re Estate of Geneva*, 5th Dist. Tuscarawas No. 2016 AP 02 0013, 2016-Ohio-5382, ¶ 4.

{¶16} On December 7, 2015, the probate court issued an order finding the Estate of Geneva was the owner of whatever remained of the $37,500 transferred to Mancino in 1999 and it was Weaver's duty as executor to recover the estate asset. *Id.* at ¶ 5. Weaver issued a subpoena to Mancino to appear and testify at a hearing on January 14, 2016. The subpoena also ordered Mancino to bring: all records relating to the $37,500 paid to him by Geneva/Weaver in 1998/1999; proof that the finds were returned to Geneva or a cashier's check made payable to the Estate of Geneva in the amount of $37,500; and all trust records, law firm deposits, account statements, disbursement receipts, transfer records to Mancino or his law firm, or any other person relating to these funds. *Id.* at ¶ 6.

{¶17} Mancino filed a motion to quash subpoena, which the probate court overruled. Mancino filed a second motion to quash subpoena. Weaver filed a motion on January 13, 2016 indicating Mancino's office may have been receiving approximately $2,000 per month from the State Teacher's Retirement System ("STRS") for Geneva that was sent to a bank in Virginia. *Id.* at ¶ 7. The probate court overruled Mancino's second motion to quash and denied a motion to set aside a magistrate's order. *Id.* at ¶ 8.

{¶18} The hearing was held before the probate court magistrate on January 22, 2016. Mancino testified the checks he received for Geneva from 1999-2006 were sent to Geneva. Mancino stated he cashed the checks and mailed the money to Geneva in prison. Mancino then testified Geneva authorized him to keep some of the funds for his ongoing attorney fee bill and Geneva wanted some of the money sent to other people, which Mancino stated he did. Mancino did not return the $37,500 because he deemed the order telling him to do so void. Mancino did not have records or invoices to show the amount of his attorney fees. *Id.* at ¶ 9.

{¶19} On January 26, 2016, the magistrate issued an order for Mancino to turn over relevant client escrow records pertaining to his transactions with and for Geneva. The trial court overruled Mancino's motion to set aside the magistrate's order and adopted the order. *Id.* at ¶ 11.

{¶20} Mancino appealed the trial court's order to this Court in *In re Estate of Geneva*, 5th Dist. Tuscarawas No. 2016 AP 02 0013, 2016-Ohio-5382. On August 15, 2016, we overruled Mancino's arguments and affirmed the judgment of the probate court. Mancino first argued the trial court abused its discretion when it denied his motions to quash the subpoena because he was not a party to the case and no action was pending

other than Geneva's estate case. *Id.* at ¶ 16. We disagreed and found that Civ.R. 45 allowed subpoenas to be issued to nonparties. *Id.* We next overruled Mancino's argument that the subpoena was unduly burdensome. *Id.* at ¶ 17. We found the Estate of Geneva showed a substantial need for the testimony and production of documents. The trial court ordered the funds be returned to the First National Bank of Dennison and Mancino did not return the funds. *Id.* Because the executor was charged with collecting and distributing the estate assets to Geneva's creditors, Mancino's testimony and records were necessary to determine whether the assets were property of Geneva's estate. *Id.*

**The Civil Proceedings, Part Two**

{¶21} On May 6, 2016, Weaver filed a Motion for Order to Show Cause against Mancino in the original civil proceedings, Case Nos. 1996 CT 09 0390 and 1996 CT 09 0391. Mancino filed a Motion to Dismiss and Objection to Motion to Show Cause.

{¶22} Mancino also filed Petition for Writ of Prohibition requesting this Court issue a writ prohibiting the Tuscarawas County Court of Common Pleas, General Division, from holding a hearing on the contempt motion. Mancino argued the trial court lacked jurisdiction over him because he was not a party to the case and was not subject the subject of the February 24, 1999 or May 28, 1999 trial court orders. He also argued Weaver lacked standing to pursue the contempt action. *State ex rel. Mancino v. Tuscarawas Cty. Court of Common Pleas*, 5th Dist. Tuscarawas No. 2016 AP 05 0029, 2016-Ohio-5763. On September 7, 2016, we dismissed Mancino's complaint. We held:

> A writ of prohibition, regarding the unauthorized exercise of judicial
>
> power, will only be granted where the judicial officer's lack of subject-matter
>
> jurisdiction is patent and unambiguous. *Ohio Dept. of Adm. Serv., Office of*

*Collective Bargaining v. State Emp. Relations Bd.* (1990), 54 Ohio St.3d 48, 562 N.E.2d 125.

Courts have "statutory and inherent powers ' * * * to punish disobedience of its orders with contempt proceedings.' *Zakany v. Zakany* (1984), 9 Ohio St.3d 192, 9 OBR 505, 459 N.E.2d 870, syllabus. Moreover, appealing a contempt order is an adequate remedy at law which will result in denial of the writ. *Manrow v. Court of Common Pleas of Lucas Cty.* (1985), 20 Ohio St.3d 37, 20 OBR 285, 485 N.E.2d 713." *State ex rel. Mancino v. Campbell*, 66 Ohio St.3d 217, 220, 1993–Ohio–68, 611 N.E.2d 319, 321 (1993).

In short, Respondent has jurisdiction over contempt proceedings.

Relator argues he is not the person who was ordered to perform the act in the trial court's order. While this argument may be raised as a possible defense to the contempt, even if is found to be true, it does not deprive the trial court of jurisdiction to hold a contempt hearing.

Similarly, Relator's argument regarding the standing of the party bringing the contempt motion may also be raised as a defense to the contempt motion, but the trial court has jurisdiction to hold a hearing on the contempt motion. "[A] party's lack of standing does not affect the subject-matter jurisdiction of the court in which the party is attempting to obtain relief." *State ex rel. Saghafi v. Celebrezze*, 8th Dist. Cuyahoga No. 102746, 2015–Ohio–1159, ¶ 8.

Finally, Relator has an adequate remedy at law by way of appeal should he be found to be in contempt of Respondent's order.

*State ex rel. Mancino v. Tuscarawas Cty. Court of Common Pleas*, 2016-Ohio-5763 at ¶¶ 6-11.

{¶23} The trial court held a show cause hearing on September 9, 2016. Weaver and Mancino appeared at the hearing, represented by counsel. Also at the hearing was the attorney representing Belt and Meek in the underlying tort action. At the hearing, Weaver argued Mancino should be held in contempt for his failure to comply with the February 24, 1999 and May 28, 1999 trial court orders for (1) his failure to return the $37,500 to the First National Bank of Dennison and (2) his receipt of STRS funds on behalf of Geneva from 1999 to 2006. Counsel for Weaver testified that he opened the estate and attempted to recover funds on behalf of the estate. (T. 13, 21). When he opened the estate, he contacted counsel for Belt and Meek, the judgment creditors. Counsel indicated to him that he should determine whether the $37,500 was returned to the First National Bank of Dennison. (T. 13). When Weaver's counsel contacted the First National Bank of Dennison to examine its records, counsel discovered Geneva was receiving payments from STRS. An examination of the bank records showed the direct deposit of the STRS funds to the First National Bank of Dennison had been cancelled. STRS records showed Geneva directed the payments to Mancino. (T. 13, 14). During the probate court proceedings, Mancino admitted to receiving the STRS funds. (T. 18).

{¶24} Counsel for Belt and Meek testified at the hearing. He stated the February 1999 and May 1999 trial court orders indicated that the only amount of monies that plaintiffs were able to attach was interest from the Geneva's bank account with the First

National Bank of Dennison. (T. 29). Counsel did not learn Geneva was receiving STRS funds until the probate proceedings in 2016. (T. 31, 33). Counsel did not take a creditor's deposition of Geneva while he was in prison. (T. 34).

{¶25} Mancino challenged the standing of Weaver as executor to bring the motion to show cause. He renewed his argument that the February 24, 1999 and May 28, 1999 trial court orders were not directed at him and the trial court had no jurisdiction over him as a non-party. Finally, Mancino argued the motion was barred by the equitable doctrines of laches and unclean hands.

{¶26} On December 9, 2016, the trial court issued its findings of fact and conclusions of law. The trial court determined as follows:

> Mancino was undisputedly the agent of Samuel Geneva at the time the orders were issued.

> Mancino as the holder of Power of Attorney for Samuel Geneva in May 1999, was subject to the Court's order for the return of funds, and he failed to return the funds in the amount of $37,500.00 as ordered by the Court.

> It is apparent that there has been wrongdoing on the part of Mancino. Upon review of the entire Court file, however, the Court concludes that a delay of almost 17 years before attempting to enforce the Court's order against Mancino was unreasonable. Weaver has offered no explanation or excuse for his delay or the delay of the other parties in pursuing these funds. All of the parties involved were put on actual notice of the whereabouts of

these funds in 1999 and had the opportunity to pursue this matter at that time.

The Court concludes that Mancino has been prejudiced by the delay of all the parties involved. Most of the records indicating what happened with these funds no longer exist. Additionally, Mancino is further prejudiced since Samuel Geneva is now deceased and unable to testify regarding this matter.

(Judgment Entry, Dec. 9, 2016). The trial court denied the show cause order and closed the tort cases.

{¶27} It is from this decision Weaver now appeals.

## ASSIGNMENTS OF ERROR

{¶28} Weaver raises two Assignments of Error:

{¶29} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING THE MOTION FOR ORDER TO SHOW CAUSE AS TO THE CONTEMPT OF ATTORNEY PAUL MANCINO, JR.

{¶30} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN APPLYING THE DOCTRINE OF LACHES AS GROUNDS FOR OVERRULING THE MOTION FOR ORDER TO SHOW CAUSE."

## ANALYSIS

{¶31} Weaver contends the trial court abused its discretion when it did not find Mancino in contempt of court for his failure to comply with the February 24, 1999 and May 28, 1999 trial court orders as to the removal of funds from Geneva's account with the First

National Bank of Dennison. We consider Weaver's first and second Assignment of Error together.

### Contempt

{¶32} There are several types of contempt: direct, indirect, civil, criminal, and summary. The fundamental distinction between direct contempt and indirect contempt lies in the location of the act of contempt – whether it takes place within the presence of the judge, or elsewhere. *A.P. Lee & Co., v. R.R. Bowler*, 10th Dist. Franklin No. 14AP-599, 2015-Ohio-2535, ¶ 31. R.C. 2705.02 states that a person guilty of any of the following acts may be punished as for a contempt:

(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer;

(B) Misbehavior of an officer of the court in the performance of official duties, or in official transactions;

* * *

(E) A failure upon the part of a person recognized to appear as a witness in a court to appear in compliance with the terms of the person's recognizance;

* * *

{¶33} The standard of proof in an indirect civil contempt proceeding is clear and convincing evidence. *Polen v. Heaston*, 2016-Ohio-7508, 73 N.E.3d 868, ¶ 12 (5th Dist.) citing *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 253 416 N.E.2d 610. The party seeking to enforce a court order must establish, by clear and convincing evidence, the existence of a court order and the nonmoving party's noncompliance with the terms of that order. *Ward v. Ward*, 5th Dist. Fairfield Nos. 15-CA-33, 15-CA-53, 2016-Ohio-

5178, ¶ 41. "Clear and convincing evidence" is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus. The determination of whether clear and convincing evidence exists is within the discretion of the trier of fact. *Brown, supra.*

{¶34} The evidence must show beyond a reasonable doubt that a person is guilty of indirect criminal contempt. *Gulbrandsen v. Summit Acres, Inc.,* 2016-Ohio-1550, 63 N.E.3d 566, 2016 WL 1462253, ¶ 45 (4th Dist.) citing *Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297 at ¶ 11, citing G*ompers v. Buck's Stove and Range Co.*, 221 U.S. 418, 444, 31 S.Ct. 492, 55 L.Ed. 797 (1911). Additionally, in cases of indirect criminal contempt, the evidence must show "that the alleged contemnor intended to defy the court." *Id.* quoting *Midland Steel Prods. Co. v. Internatl. U.A.W. Local 486*, 61 Ohio St.3d 121, 573 N.E.2d 98 (1991), paragraph two of the syllabus.

{¶35} A trial court's decision regarding contempt will not be reversed absent an abuse of discretion. *Gunawardena v. Gunawardena*, 5th Dist. Delaware No. 14 CAF 06 0035, 2015–Ohio–2566, ¶ 1 citing *Beltz v. Beltz*, 5th Dist. Stark Nos. 2005CA00193, 2005CA00194, 2006–Ohio–1144. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

### Subject Matter Jurisdiction and Standing

{¶36} The trial court denied Weaver's motion to show cause based on the equitable doctrine of laches. In support of the trial court's denial of the motion to show

cause, Mancino argues on appeal that the trial court also did not have jurisdiction to consider Weaver's motion to show cause. Pursuant to App.R. 3(C)(2), if Mancino intends to defend a judgment or order appealed by an appellant on a ground other than that relied on by the trial court but does not seek to change the judgment or order, he is not required to file a notice of cross appeal or to raise a cross-assignment of error.

{¶37} Mancino first contends the trial court was without jurisdiction to hear the matter because Mancino was not a party to the tort action. Mancino next argues Weaver did not have standing to bring the motion to show cause because he was not a party to the tort action. Because Mancino raises jurisdictional matters, we address these issues before considering the merits of the trial court's judgment.

{¶38} This Court has already addressed the issue of whether the trial court had jurisdiction to entertain Weaver's motion to show cause. In *State ex rel. Mancino v. Tuscarawas Cty. Court of Common Pleas*, 5th Dist. Tuscarawas No. 2016 AP 05 0029, 2016-Ohio-5763, we held the trial court had subject matter jurisdiction over the contempt hearing. The "law of the case" doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984).

{¶39} Mancino next contends the trial court has no jurisdiction over him because he was not a party to the tort action. In our decision dismissing Mancino's petition for a writ of prohibition, we stated that whether Mancino was the person who was ordered to perform the act in the trial court's order could be raised as a possible defense to the contempt. *State ex rel. Mancino v. Tuscarawas Cty. Court of Common Pleas*, 5th Dist.

Tuscarawas No. 2016 AP 05 0029, 2016-Ohio-5763, ¶ 10. The trial court found in its December 9, 2016 judgment entry that as the agent of Geneva and holder of the power of attorney at the time the orders were issued, Mancino was subject to the Court's order for the return of funds.

{¶40} We agree with the trial court's finding that Mancino was subject to the trial court's February 24, 1999 and May 28, 1999 orders. There is no dispute of fact that Mancino was Geneva's counsel of record and attorney-in-fact. The February 1999 and May 1999 trial court orders directed Mancino to attach the $37,500. He did not. Nor did Mancino, as Geneva's attorney-in-fact, return the $37,500 to the First National Bank of Dennison. As Geneva's attorney-in-fact, there is no dispute that Mancino managed other aspects of Geneva's financial affairs, such as redirecting the STRS funds from the First National Bank of Dennison, collecting checks from 1999 to 2006 on behalf of Geneva, cashing them, and sending them to Geneva and other people as directed by Geneva. As counsel of record for Geneva, the trial court has personal jurisdiction over Mancino for the purposes of enforcing its orders. *In re Marshall*, 8th Dist. Cuyahoga No. 88780, 2007-Ohio-6639, ¶ 20 citing *In re Kinross*, 84 Ohio App.3d 335, 340, 616 N.E.2d 1128 (1st Dist.1992) (finding there is personal jurisdiction over attorneys practicing within that court).

{¶41} Mancino finally argues that Weaver had no standing to bring the motion to show cause. While raised by Mancino at the trial court level, the trial court did not address the issue of standing in its judgment entry denying the motion to show cause.

{¶42} Standing "refers to whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *State ex rel. Ford*

*v. Ruehlman*, 149 Ohio St.3d 34, 2016-Ohio-3529, 73 N.E.3d 396, ¶ 56 quoting *Davet v. Sheehan*, 8th Dist. Cuyahoga No. 101452, 2014-Ohio-5694, ¶ 22.

{¶43} At the time of the February 24, 1999 trial court order, Weaver was Geneva's attorney-in-fact. After Geneva's death, Weaver was named executor of Geneva's estate. Under R.C. 2109.01, an executor of an estate is a "fiduciary." "The fiduciary duties of an executor are primarily to collect the estate assets, pay debts, and make distributions." *In re Estate of Faldon*, 6th Dist. Erie No. E-15-071, 2016-Ohio-7337, ¶ 26 quoting *Estate of Barry*, 11th Dist. Geauga No. 2013–G–3147, 2015–Ohio–1203, ¶ 17. "The executor also owes various duties to the beneficiaries of the estate, duties involving keeping proper accounts, giving timely notice, preserving assets, avoiding the commingling of property, and basic duties of trust and loyalty." *Id.* The executor "serves as a representative of the entire estate and owes a duty to act in a manner which protects the beneficiaries' interests." *Id.*, citing *Elam v. Hyatt Legal Serv.*, 44 Ohio St.3d 175, 176, 541 N.E.2d 616 (1989).

{¶44} In this case, Weaver as executor had standing to file the motion to show cause in order to preserve the assets of Geneva's estate. The February 24, 1999 and May 28, 1999 trial court orders directed Geneva and his agents to return the $37,500 to his account at First National Bank of Dennison and forbid the removal of funds from any account held in the name of or for the benefit of Geneva until further order of the trial court. Weaver has a duty to the beneficiaries and creditors of Geneva's estate to preserve assets, wherever those assets may be located.

{¶45} We find the trial court had jurisdiction to consider the motion to show cause against Mancino. We now address Weaver's Assignments of Error.

**Laches**

{¶46} Weaver contends the trial court abused its discretion when it found his motion to show cause was barred by the equitable doctrine of laches.

{¶47} Laches has been defined by the Ohio Supreme Court as "an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." *Nowinski v. Nowinski,* 5th Dist. Licking No. 10 CA 115, 2011-Ohio-3561, ¶ 20 quoting *Connin v. Bailey*, 15 Ohio St.3d 34, 35, 472 N.E.2d 328 (1984) quoting *Smith v. Smith*, 168 Ohio St. 447, 156 N.E.2d 113 (1959). Issues of waiver, laches, and estoppel are "fact-driven." *Riley v. Riley*, 5th Dist. Knox No. 2005–CA–27, 2006–Ohio–3572, ¶ 27, citing *Dodley v. Jackson*, 10th Dist. Franklin No. 05AP11, 2005–Ohio–5490. Delay in asserting a right does not of itself constitute laches. *Zartman v. Swad*, 5th Dist. Fairfield No. 02CA86, 2003–Ohio–4140, ¶ 51, citing *Connin, supra*, at 35–36, 472 N.E.2d 328. Similarly, prejudice in a laches defense is generally not inferred merely from inconvenience or the passage of time. *See Smith, supra*, at 457, 156 N.E.2d 113; *State ex rel. Polo v. Cuyahoga County Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995). The decision of a trial court concerning the application of the equitable doctrine of laches will not be reversed on appeal in the absence of an abuse of discretion. *Payne v. Cartee*, 111 Ohio App.3d 580, 590, 676 N.E.2d 946, 952–953 (4th Dist.1996). An abuse of discretion is more than just an error in judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030–1031 (1989).

{¶48} In denying the motion to show cause, the trial court in this case applied the equitable doctrine of laches. It found there was wrongdoing on the part of Mancino, but

the delay of almost 17 years in the enforcement of the trial court's order was unreasonable. The trial court determined Mancino was prejudiced by the delay of the parties to enforce the order because records no longer existed and Geneva was unable to testify in the matter.

{¶49} It is based on the trial court's determination of Mancino's wrongdoing, supported by the evidence in the record, that we must find the trial court abused its discretion when it applied the doctrine of laches to this matter. We do so based on the doctrine of unclean hands. "The most memorable equitable maxim learned by every first year law student is 'he who comes seeking equity must come with clean hands.' " *State ex rel. Doran v. Preble Cty. Bd. of Commrs.*, 2013-Ohio-3579, 995 N.E.2d 239, ¶ 24 (12th Dist.) quoting *City of Kettering v. Berger*, 4 Ohio App.3d 254, 261, 448 N.E.2d 458 (2d Dist.1982). "In order to have any standing to successfully assert an equitable defense, i.e., laches, one must come with clean hands, and if he has violated conscience or good faith or has acted fraudulently, equitable release in defenses are not available to him." *Id*. at 261–262, 448 N.E.2d 458. "[U]nclean hands are not to be lightly inferred. They must be established by clear, unequivocal and convincing evidence." *Hoover Transp. Services, Inc. v. Frye*, 77 Fed.Appx. 776, 784 (6th Cir.2003), quoting *Kearney & Trecker Corp. v. Cincinnati Milacron, Inc.*, 562 F.2d 365, 371 (6th Cir.1977).

{¶50} The doctrine of unclean hands prevents Mancino's assertion of the equitable defense of laches. The trial court's December 9, 2016 judgment entry establishes Mancino's unclean hands in equity. Based on the show cause hearing, the trial court found Mancino failed to comply with the trial court orders and engaged in wrongdoing:

Mancino was undisputedly the agent of Samuel Geneva at the time the orders were issued.

Mancino as the holder of Power of Attorney for Samuel Geneva in May 1999, was subject to the Court's order for the return of funds, and he failed to return the funds in the amount of $37,500.00 as ordered by the Court.

It is apparent that there has been wrongdoing on the part of Mancino.

(Judgment Entry, Dec. 9, 2016).

{¶51} A delay in enforcement does not presume the application of laches. While there was a delay of 17 years in the enforcement of the trial court's orders, enforcement would have been unnecessary if Mancino and Geneva had obeyed the trial court's orders in 1999. The failure of Mancino and Geneva to obey the trial court's orders was not discovered until Weaver became the executor of Geneva's estate in 2015 and his counsel examined Geneva's financial records. It was then that Weaver and counsel for Belt and Meek realized that Geneva moved his assets from the First National Bank of Dennison and never returned the $37,500. There is no dispute that as Geneva's counsel of record and attorney-in-fact, Mancino worked with Geneva to move his assets and did not obey the trial court's order to return the assets.

{¶52} "The power of a court to enforce its own proper orders is fundamental and inherent, as well as constitutional; necessarily so, to give it standing and afford respect and obedience to its judgment. This is upon the broad ground of public policy, and without which power the judicial edifice would fall." *Wind v. State*, 102 Ohio St. 62, 64, 130 N.E. 35 (1921). Upon the facts of this case, we must find the trial court's application of the

doctrine of laches was unreasonable based on its own finding that Mancino engaged in wrongdoing. Mancino could not assert the equitable defense of laches when he did not come to the court with clean hands.

{¶53} We reverse the trial court's December 9, 2016 judgment entry and remand the matter for a full hearing to determine whether Mancino was in contempt of the February 24, 1999 and May 28, 1999 trial court orders.

## CONCLUSION

{¶54} Weaver's two Assignments of Error are sustained.

{¶55} The judgment of the Tuscarawas County Court of Common Pleas is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion and law.

By: Delaney, P.J. and

Baldwin, J. concur.

Hoffman, J., concurs in part and dissents in part.

*Hoffman, J. concurring in part and dissenting in part*

{¶56} I concur in the majority's analysis and rejection of Appellant's arguments challenging the trial court's subject matter jurisdiction and Appellee's standing. I further concur in the majority's analysis and decision the trial court abused its discretion in applying the doctrine of laches to this matter.[1]

{¶57} I respectfully dissent, in part, from the majority's final disposition. I would remand the matter to the trial court to determine whether Appellant was in contempt of court with regard to the STRS payment. I would enter a final judgment finding Appellant in contempt with regard to the $37,500 bank account and remand the matter to the trial court to determine the appropriate sanction.

---

[1] I find the majority's citation to *State ex rel. Doran v. Preble Cty. Bd of Commers.*, 2013-Ohio-3579, unnecessary.