[Cite as *Lillibridge v. Pica*, 2021-Ohio-1480.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| MARVIN W. LILLIBRIDGE | : | Hon. Craig R. Baldwin, P. J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellant | : | Hon. William B. Hoffman, J. |
|  | : |  |
| -vs- | : |  |
|  | : |  |
|  | : | Case No. 2020CA0012 |
| RICHARD PICA | : |  |
|  | : |  |
| Defendant-Appellee | : | OPINION |

CHARACTER OF PROCEEDING:      Civil appeal from the Coshocton Municipal
Court, Case No. CVH1900578

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      April 28, 2021

APPEARANCES:

For Plaintiff-Appellant          Defendant-Appellee

ROBERT E. WEIR          RICHARD A. PICA
305 Main Street          588 S. 12th Street
Coshocton, OH 43812          Coshocton, OH 43812

*Gwin, J.,*

{¶1} Appellant appeals the judgment entries of the Coshocton Municipal Court vacating a default judgment and finding in favor of appellee on appellant's replevin complaint.

*Facts & Procedural History*

{¶2} On September 26, 2019, appellant Marvin Lillibridge filed a replevin complaint against appellee Richard Pica alleging as follows: appellant is the owner of a 1967 Chevrolet Camaro; appellee obtained the Camaro without a certificate of title; appellee either removed the VIN or bought the vehicle without a VIN; and appellee is wrongfully detaining the Camaro from appellant. In his prayer for relief, appellant requested the Camaro be recovered from appellee and be given to appellant. Also, on September 26, 2019, appellant filed a motion for order of possession of the Camaro.

{¶3} The clerk of courts issued a notice to appellee on the motion for possession. The notice provided that appellee had to request a hearing within five business days of receipt of the notice, and that if appellee requested a hearing, it would be held on October 15, 2019. A deputy sheriff served appellee with the complaint and motion for order of possession on September 28, 2019. On October 2, 2019, appellee filed a "request for hearing" stating he "disputed the claim for an order for recovery of possession." The clerk of courts issued a notice of hearing on October 2, 2019, stating the hearing on the motion would be held on October 15, 2019. Appellee requested the clerk of courts issue subpoenas to witnesses for the October 15th hearing.

{¶4} Appellant filed a motion to continue the hearing on October 8, 2019. The trial court rescheduled the hearing for November 5, 2019. Appellee filed a request on

October 18, 2019 for the clerk of courts to issue subpoenas to witnesses for the November 5th hearing.

{¶5} On October 28, 2019, appellant filed a motion for default judgment against appellee. Appellant argued the "request for hearing" filed by appellee was not a pleading, but instead was an appearance in the case. Appellant served the motion to appellee via ordinary mail, sent on October 28, 2019. The trial court granted the motion for default judgment on October 28, 2019 and ordered appellee to transfer possession of the Camaro to appellant.

{¶6} On October 30, 2019, the trial court issued a judgment entry vacating and setting aside the default judgment. The trial court stated, "this matter came to the attention of the Court on this 30th day of October 2019 at the direction of the Clerk's Office indicating there may have been an error in granting the default judgment." Further, "Defendant filed his 'request for hearing' on October 15, 2019. On October 8, 2019, Plaintiff requested a continuance of the hearing. It was rescheduled for November 5, 2019 at 11:15 a.m. On October 28, 2019, Plaintiff filed a motion for default judgment with Judge Williams who was sitting by assignment. Plaintiff failed to point out and Judge Williams failed to notice that Defendant had filed a pleading in this matter." The trial court stated the hearing already set for November 5, 2019 remained scheduled.

{¶7} Appellant filed a motion on October 31, 2019 requesting the court "revise" its October 30, 2019 judgment entry. Appellant asked the trial court to reinstate the October 28, 2019 default judgment entry. The trial court denied the motion on October 31, 2019.

{¶8} By agreement of the parties, the hearing was continued to November 19, 2019.

{¶9} Appellant testified he has known Bill Kiss ("Kiss") for over fifty years. Kiss has a garage with multiple cars in it, but appellant has only known Kiss to own one Camaro. Appellant introduced into evidence a letter containing a list of all the parts Kiss allegedly took off the Camaro. The letter was from the Benbow Law Office, which represented Kiss during his divorce. At some point, appellant learned that Kiss, through his current wife Amy, transferred five vehicles to his wife's daughter, Samantha Bryant ("Bryant"). Appellant heard Bryant had the titles to the vehicles. Appellant stated he bought all five vehicles from Bryant, including the Camaro, for $3,000 each. Appellant last saw the Camaro in appellee's garage earlier in the summer, and saw appellee reach up and pull the garage door down to hide the Camaro from appellant. Appellant testified the car is his, and he intends to put $25,000 - $30,000 to "put it back on the street." Appellant introduced into evidence several pictures of the Camaro from approximately 1991.

{¶10} On cross-examination, appellant stated he has never built a race car. Appellant did not know when he saw the Camaro in appellee's garage, but it was sometime "last year."

{¶11} After appellant testified, he rested his case.

{¶12} Steve Taylor ("Taylor") testified if the garage doors on appellee's garage were all the way up, appellee could not reach them to pull them down to hide the Camaro from appellant. Taylor estimated it would take approximately $100,000 to put the Camaro on the street to race. The trial judge asked Taylor several questions about the body,

frame, and other parts of the Camaro.  When asked about the 1991 pictures of the Camaro, Taylor stated the Camaro appellee got looked similar to the photos, but not exactly.  When appellee got a Camaro, it did not have a motor or a transmission.  The hood is different.  Because the Camaro had a roll cage, it was not the original car.  Taylor confirmed the Camaro he saw in appellee's garage was the body of an original Camaro put on another frame.  When Taylor first saw appellee's car, it was a chassis car that did not have doors, a front end, or a frame; somebody had built a chassis and put a shell of a body on top of it.  The picture from 1991 was not a chassis car.

{¶13}  Taylor was aware that H & H built fenders, a hood, a front valance, and a grill for appellee's Camaro.  Taylor stated appellee's car, in its state today, is a "one-piece aftermarket-built fiberglass complete nose.  The fenders, the grill, and all that's all fiberglass, all replica, one piece, and then there's a fiberglass hood that fastens to it, but that's – that's nothing – no connection to a General Motors '67 Camaro.  It's an aftermarket piece of fiberglass."  Taylor put the transmission and electronics in appellee's car.  Taylor brought appellee's vehicle to the hearing, as well as a "real one" beside it to show the difference.

{¶14}  Bryant testified she received the titles for five older model cars from her step-father Kiss prior to his heart surgery.  She does not know what types of vehicles they were.  She never took possession of any of the vehicles.  She had a contract to sell the vehicles to appellant for $3,000 each.  Bryant testified she decided to sell the vehicles because Attorney Weir, counsel for appellant, came to her house and told her she fraudulently signed the titles because they were involved in a lawsuit, and she could possibly go to jail.  Bryant stated Attorney Weir told her she may lose her job since it is a

federal job and a fraud charge is an automatic firing. Bryant stated her husband witnessed this conversation.

{¶15} At this point in the hearing, the trial judge stopped the proceedings, and stated that, based on Bryant's testimony, Attorney Weir was a potential witness in the case. The trial judge did not allow Attorney Weir to cross-examine Bryant and told Attorney Weir he may need to withdraw as counsel for appellant. Attorney Weir agreed he needed to withdraw from the case and let appellant hire alternate counsel to finish the case.

{¶16} The trial court set a further hearing on December 31, 2019. Appellant filed a motion to continue. Appellee filed a letter in opposition to the motion to continue, or requesting the hearing be set for a specific date when he would be in town. The trial court continued the hearing to a date when appellee indicated he would be in town, on May 5, 2020. Appellant filed a motion to continue the hearing for six weeks. The trial court granted the motion, and held a hearing on June 16, 2020.

{¶17} At the beginning of the June 16, 2020 hearing, Attorney Weir made an oral motion to withdraw from the case. Appellant then proceeded pro se. Appellant called Attorney Weir as a rebuttal witness. Attorney Weir stated appellant's wife got a judgment against Kiss in another lawsuit for $29,000. In an attempt to collect that judgment, Attorney Weir filed a foreclosure action on the real estate Kiss owns in Coshocton County. After learning through an owner of a tow business in Tuscarawas County about the vehicle transfers, Attorney Weir amended the foreclosure complaint to include Bryant as a party-defendant.

{¶18} Attorney Weir went to Bryant's house to verify her address, knocked on her door, and told her she "may be brought in on a fraudulent transfer." Bryant informed him her mother stated this was part of an estate plan of Kiss. Attorney Weir told her she would be receiving the complaint and told her, "if you want to talk about it after you get the copy, let me know." Bryant went to Attorney Weir's office. He informed her she may want to get a lawyer. Attorney Weir told Bryant if the transfers were not fraudulent and were for estate planning purposes, it was no problem. However, if they were fraudulent, then they would have to be re-done. Attorney Weir told her she would not go to jail over this because it is a civil matter.

{¶19} Appellee stated when he purchased the vehicle from Kiss in 2010, it was a chassis, not a car. Appellee has put a lot of work and parts into the vehicle since 2010, and now believes it is worth between $65,000 and $75,000. Appellee testified there was no VIN number on the vehicle when he got it and the vehicle title Bryant sold to appellant was not his car because all appellee got from Kiss in 2010 "was a back half of a rear end and I built all the rest myself." Appellee believes Kiss had more than one Camaro in 2010 when he sold a Camaro to appellee.

{¶20} The trial court took the matter under advisement and issued a judgment entry on June 29, 2020. The trial court concluded that, at best, appellant established appellee has parts from the vehicle represented by the title he acquired from Bryant. Further, that the drag racing vehicle appellee owns is not now the vehicle represented by the title. The trial court found in favor of appellee.

{¶21} Appellant requested the trial court issue findings of fact and conclusions of law. The trial court did so in a judgment entry on August 11, 2020, and made the following

findings of fact: Kiss sued appellant's wife for repairs done to her car; appellant's wife filed a counter-claim, and obtained a significant judgment against Kiss; in an effort to collect the judgment, appellant discovered Kiss transferred five motor vehicle titles to Bryant; the titles were for a 1962 Chevy with 24,000 miles on, a 1966 Chevrolet Nova, a 1954 Chevrolet, a 1974 Chevrolet truck, and a 1967 Chevrolet Camaro; appellant believes these transfers were an attempt to avoid a collection of his wife's judgment; appellant's attorney (who also represented appellant's wife) confronted Bryant about the transfers; after her conversation with appellant's attorney, Bryant believed she could go to jail for these transfers because the transfer may have been to avoid collection of a judgment; Bryant believed she could lose her job; Kiss used proceeds from his IRA to pay appellant's wife's judgment against him; appellant however, not satisfied, offered Bryant $15,000 for the titles to the five vehicles; Bryant did not know where the vehicles were and never took possession of them; appellant did not inspect the vehicle before taking the titles; appellant relied upon his memory of the vehicles in only paying $15,000 for the five antique vehicles; Kiss transferred the titles to Bryant at the request of his wife because of his ill health; Kiss did not possess the Camaro when he signed the title, the transfer was made in error, as Kiss had sold the body and frame parts of the Camaro to appellee in 2010; Kiss had used it as a race car; appellee acquired the parts of the Camaro for $3,800 without a motor or transmission and it had front-end damage; and appellee since has modified those parts of the Camaro to incorporate it into a drag race car which he claims is worth $50,000 today.

{¶22} The trial court issued the following conclusions of law: the drag racing vehicle appellee owns is not the vehicle represented by the Camaro title which appellant

held; and appellant has failed to establish probable cause that the drag racing car owned by appellee is his vehicle represented by his title.

{¶23} Appellant appeals the judgment entries of the Coshocton Municipal Court and assigns the following as error:

{¶24} "I. THE TRIAL COURT ABUSED ITS DISCRETION BY VACATING THE DEFAULT JUDGMENT ENTERED IN FAVOR OF APPELLANT AGAINST APPELLEE.

{¶25} II. THE DECISION OF THE TRIAL COURT, DISMISSING APPELLANT'S REPLEVEIN COMPLAINT, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

{¶26} In his first assignment of error, appellant contends the trial court committed error in vacating the default judgment against appellee because appellee's request for hearing was not a pleading or defense pursuant to the Ohio Rules of Civil Procedure.

{¶27} We find this argument is not timely. R.C. 2505.02(B)(3) states as follows: "An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is * * * [a]n order that vacates or sets aside a judgment or grants a new trial." The October 30, 2019 judgment entry of the trial court vacated the default judgment. Thus, pursuant to R.C. 2505.02(B)(3), the October 30, 2019 judgment entry was a final, appealable order. Appellant's appeal was not filed until September 10, 2020. Pursuant to Appellate Rule 4(A)(1), appellant's appeal of the October 30, 2019 judgment entry is untimely.

{¶28} Additionally, both parties agreed that appellee's "request for hearing" constituted an appearance in the action for purposes of Civil Rule 55(A). Civil Rule 55(A)

provides, "if the party against whom judgment by default is sought has appeared in the action, he* * * shall be served with written notice of the application for judgment at least seven days prior to the hearing on such application.

{¶29} Compliance with the seven-day notice requirement of Civil Rule 55(A) is mandatory. *AMCA Int'l Corp. v. Carlton*, 10 Ohio St.3d 88, 461 N.E.2d 1282 (1984); *Rennicker v. Jackson*, 5th Dist. Tuscarawas No. 2003AP090076, 2004-Ohio-3051. This Court has repeatedly held if a party or his representative has appeared in any manner, the notice and hearing required by Civil Rule 55(A) must be given to that party before default judgment may be granted. *Guiley v. Dewalt*, 5th Dist. Stark No. 2016CA00156, 2017-Ohio-4151; *Fifth Third Mortgage v. Fantine*, 5th Dist. Fairfield No. 11 CA 20, 2011-Ohio-4968.

{¶30} The motion for default judgment was mailed to appellee by ordinary mail sent on October 28, 2019. The trial court granted the motion for default on October 28, 2019. It is evident appellant was not afforded the required seven days' notice for default judgment, which was in contravention to the notice requirements contained in Civil Rule 55(A). Because appellee appeared in this action, the trial court erred in granting the motion for default judgment without the required seven days' notice, and did not abuse its discretion in vacating the default judgment. *Mattress Distributors, Inc. v. Cook*, 8th Dist. Cuyahoga No. 81794, 2003-Ohio-1361; *Dietrich v. Dobos*, 10th Dist. Franklin No. 13AP-1053, 2014-Ohio-4023; *Hoffman v. Hoffman*, 1st Dist. Hamilton Nos. C-170640, C-170641, 2018-Ohio-3029.

{¶31} Once the trial court vacated the default judgment, it was within the trial court's discretion as to whether to grant the motion. *Nieman v. Bunnell Hill Dev. Co., Inc.*, 12th Dist. Butler No. CA2002-10-249, 2004-Ohio-89.

{¶32} Appellant's first assignment of error is overruled.

II.

{¶33} In his second assignment of error, appellant argues the decision of the trial court was against the manifest weight of the evidence because appellant proved ownership of the 1967 Camaro and appellee failed to do so.

{¶34} A judgment supported by some competent and credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). As the trier of fact, the trial judge is in the best position to view the witnesses and their demeanor in making a determination of the credibility of the testimony. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 603 N.E.2d 1079 (10th Dist. 1991). "[A]n appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court's findings." *State ex rel. Celebrezze v. Environmental Enterprise, Inc.*, 53 Ohio St.3d 147, 559 N.E.2d 1335 (1990).

{¶35} Appellant filed a replevin action against appellee. "In Ohio, replevin is solely a statutory remedy." *America Rents v. Crawley*, 77 Ohio App.3d 801, 603 N.E.2d 1079 (10th Dist. 1991). "Replevin is "[a]n action whereby the owner or person entitled to a repossession of goods or chattels may recover those goods or chattels from one who * * * wrongfully detains [them]." *Davis v. Springfield Police Dept.*, 2nd Dist. Clark No. 2003-

CA-44, 2004-Ohio-1164.  The action is "strictly a possessory action, and it lies only in behalf of one entitled to possession against one having, at the time the suit is begun, actual or constructive possession and control of the property."  *Black v. Cleveland*, 58 Ohio App.2d 29, 387 N.E.2d 1388 (8th Dist. 978).

{¶36}  The plaintiff in a replevin action is required to "prove that he is entitled to possession of the property and that, at the time the [suit] was filed, the defendant had actual or constructive possession and control of [it]."  *Mulhollen v. Angel*, 10th Dist. Franklin No. 03AP-1218, 2005-Ohio-578.

{¶37}  We find the trial court's judgment is supported by competent and credible evidence.

{¶38}  Appellant testified he saw appellee attempting to hide the Camaro in his garage "sometime last year," and relied on his memory and photographs from 1991 to establish he was entitled to immediate possession of the Camaro.  However, appellee testified Kiss had more than one Camaro when he sold him the Camaro at issue in 2010.  Appellee stated there was no VIN number on the vehicle when he got it, and the title Bryant sold to appellant was not his car.  Bryant did not know what vehicles she held title to, had never seen the vehicles, and never had possession of any of the vehicles.  Taylor testified he towed the vehicle at issue in this case to the hearing, as well as a "real" Camaro, to demonstrate the difference between appellee's vehicle and a "real one."  Taylor testified the vehicle in the pictures from 1991 looked similar to appellee's Camaro, but was not exactly the same.  Taylor believes the vehicle appellee possesses is not the original car from 1991, as when he first saw appellee's car it was a chassis car, and the car in the 1991 picture was not a chassis car.  The trier of fact may believe all, part, or

none of the testimony of any witness who appears before it. *Rogers v. Hill,* 124 Ohio App.3d 468, 706 N.E.2d 438 (4th Dist. 1998). The trial court was in the best position to assess the credibility of the witnesses. *Id.*

{¶39} The trial court concluded that, at best, appellant established appellee has parts from the vehicle represented by the title he acquired from Bryant and the drag racing vehicle appellee owns is not now the vehicle represented by that title.

{¶40} We find this determination is supported by competent and credible evidence. Appellee testified the vehicle he got from Kiss in 2010 was a chassis, not a car. When he got the Camaro, it did not have the motor or transmission. When Taylor first saw appellee's car, it was a chassis car that did not have doors, a front end, or a frame, and somebody had hand-built a chassis and put a shell of a body on top of it. Taylor stated appellee's car, in its state today, was one appellee had built and is a "one-piece aftermarket piece of fiberglass. The fenders, the grill, and all that's all fiberglass, all replica, one piece, and then there's a fiberglass hood that fastens to it, but that's – that's nothing – no connection to a General Motors '67 Camaro."

{¶41} The trial court's judgment entry is not against the manifest weight of the evidence. Appellant's second assignment of error is overruled.

{¶42} Based on the foregoing, appellant's assignments of error are overruled. The judgment entries of the Coshocton Municipal Court are affirmed.

By Gwin, J.,

Baldwin, P.J., and

Hoffman, J., concur