[Cite as *DN Community Fed. Credit Union v. Joliat*, 2024-Ohio-2380.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| DN COMMUNITY FEDERAL CREDIT UNION | : | JUDGES: |
| | : | |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | Case No. 2023 CA 00133 |
| | : | |
| JEFFREY T. JOLIAT, ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
                             Common Pleas, Case No.
                             2022CV01508

JUDGMENT:                    AFFIRMED

DATE OF JUDGMENT ENTRY:      June 21, 2024

APPEARANCES:

For Plaintiff-Appellee:                For Defendants-Appellants:

STEVEN E. SEASLY                       JON A. TROYER
ANDREW J. WOLF                         4580 Stephens Circle NW
200 Public Square, Suite 2800          Suite 100
Cleveland, OH 44114                     Canton, OH 44718

AMY CLUM HOLBROOK
965 Keynote Circle
Cleveland, OH 44131

*Delaney, P.J.*

{¶1} Defendants-Appellants Jeffrey T. Joliat, Shale Brewing Company, LTD., Shale Craft Coffee, LLC., and New Berlin Dough Company, LLC appeal the September 12, 2023 judgment entry of the Stark County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

### Promissory Note and Security Agreement

{¶2} On April 23, 2021, Plaintiff-Appellee DN Community Federal Credit Union (hereinafter "DN Credit Union") executed a Promissory Note and Security Agreement with Defendants-Appellants Jeffrey T. Joliat and Shale Brewing Company, LTD (hereinafter "Joliat"). Pursuant to the terms of the Promissory Note, DN Credit Union provided funds totaling $423,448.33 to Joliat. Joliat was to make 180 monthly payments in the amount of $2936.00 starting June 10, 2021. The funds agreed to in the Promissory Note were secured by the Security Agreement. The Security Agreement states in pertinent part:

**1. Definitions**. The following terms as used in this Agreement shall have the meanings set forth below:

"Collateral" shall mean all of the property set forth in Exhibit A attached hereto and made a part hereof, and all property of the same class and character acquired by Debtor subsequent to the date hereof, and all proceeds thereof, and all substitutions, replacements and accessions thereto.

Schedule A was attached to the Security Agreement.[1] Schedule A was a March 24, 2020 appraisal of equipment assets for Shale Brewing completed by Kiko Auctioneers. The total appraisal of the equipment assets was $324,750.

{¶3} After the Promissory Note and Security Agreement were signed, DN Credit Union filed a UCC financing statement with the Secretary of State. The UCC filing stated as to collateral information that the financing statement covered the following collateral: "All assets of debtor (The 'Assets'). This includes assets of every kind in nature, whether now owned or hereafter acquired, and wherever located, including without limitation the assets listed on Schedule A attached hereto, and all proceeds of any sales of the assets."

**Default on the Promissory Note**

{¶4} Joliat defaulted on the Promissory Note.

{¶5} On September 16, 2022, DN Credit Union filed a complaint and emergency motion for possession of personal property with the Stark County Court of Common Pleas, Case No. 2022CV01508. DN Credit Union alleged that after Joliat's default on the Promissory Note, it made a demand to Joliat to surrender the property listed in Schedule A of the Security Agreement. Joliat allegedly failed to do so and DN Credit Union believed that Joliat was removing and transferring the Schedule A assets to his other businesses, Shale Craft Coffee and New Berlin Dough Company. DN Credit Union also filed a separate motion, entitled "Plaintiff's Emergency Motion for Possession of Personal Property (Replevin)." Pursuant to R.C. 2737.19 and supported by an affidavit from the DN Credit Union Branch Manager, DN Credit Union requested an emergency order for

---

[1] While the terms of the Security Agreement refer to the appraisal of equipment assets from Shale Brewing prepared by Kikos Auctioneers as "Exhibit A," the document itself states "Schedule A." In these proceedings, the parties refer to the document as "Schedule A." We will refer to the document as "Schedule A."

possession of the Schedule A assets without notice to Joliat and without conducting a hearing.

{¶6} On September 19, 2022, the trial court granted DN Credit Union's emergency motion for possession of personal property in replevin. The trial court found that DN Credit Union was entitled to immediate possession of the assets listed in Schedule A. It ordered Joliat and the other named defendants to deliver possession of the Schedule A collateral to DN Credit Union, and the Stark County Sheriff was to follow the steps authorized by statute to deliver possession of the property to DN Credit Union after DN Credit Union posted a bond in the amount of $649,000.00. The trial court set the matter for a hearing on September 29, 2022.

{¶7} On September 19, 2022, DN Credit Union filed a Complaint on Cognovit Promissory Note against Jeffrey T. Joliat and Shale Brewing Company, LTD. in the Stark County Court of Common Pleas, Case No. 2022CV01510. On September 23, 2022, DN Credit Union obtained, pursuant to the cognovit provisions of the Promissory Note, a judgment by confession in the amount of $395,100.36 plus interest.

**Joliat's Counterclaims and Request for Temporary Restraining Order**

{¶8} Joliat responded to the replevin action with a motion for a temporary restraining order and preliminary injunction, filed September 26, 2022. In the motion, Joliat stated that while he believed that he and DN Credit Union were working together to wind up his business, he was unaware that DN Credit Union filed the complaint for emergency replevin. He only became aware of the replevin action when a purported agent of DN Credit Union came to the Shale Brewing business location and changed the locks to the premises. Joliat claimed that DN Credit Union, through its agent, took possession

of the collateral listed in Schedule A, but impermissibly took control of assets not listed in Schedule A, including Joliat's Ford F-350 truck, bicycles on loan from another business, and other unknown items. The trial court set the matter for a hearing on October 12, 2022.

**TRO Hearing**

{¶9} On October 12, 2022, the trial court held a hearing on both Joliat's motion for a temporary restraining order and DN Credit Union's emergency motion for possession of personal property.

{¶10} Jessica Cobbs, the interim CEO/manager of DN Credit Union, testified on behalf of DN Credit Union as to the Promissory Note and Security Agreement. DN Credit Union hired Ben Bolog with FAB Transport and Recovery to secure the Schedule A assets. Cobbs testified that Joliat gave her the door code to the Shale Brewing business location for the replevin action. Her last interaction with Joliat was when she was called to the business by Bolog because the building landlords were not aware of the replevin action. She spoke with the landlords, and they were shown the court papers.

{¶11} Joliat testified as to the removal of the property from Shale Brewing. Joliat personally owned a flatbed trailer that he had promised to another contractor to pay off Joliat's debts. The contractor left the trailer with Joliat, who stored the trailer near the Shale Brewing business. On September 22, 2022, Joliat realized the flatbed trailer was missing and believed it was stolen, filing a police report. He reviewed security videos showing the flatbed trailer being hooked to a truck and presented the stills of the video at the hearing as Exhibit 1. Joliat was passing the Shale Brewing business location when he saw what he thought was the flatbed trailer hooked to a FAB Recovery truck. Ben

Bolog testified that he did not take the flatbed trailer. He was shown Exhibit 1, and he denied the truck hooked to flatbed trailer belonged to his business.

{¶12} During his closing argument, Joliat argued DN Credit Union exceeded the authority of the September 19, 2022 replevin order. At the trial court's inquiry, Joliat identified two pieces of property allegedly taken by DN Credit Union and outside the Schedule A assets: a Ford F-350 truck and the flatbed trailer shown in Exhibit 1. There was no further identification at the hearing as to the property items allegedly taken by DN Credit Union.

## Joliat Counterclaims

{¶13} On October 14, 2022, Joliat filed an answer to the complaint and a counterclaim alleging ten causes of action: breach of contract, civil conspiracy, conversion, theft, willful deterioration of assets, violation of good faith and fair dealing, tortious interference with an existing and prospective business relationship, violations of Fair Debt Collection Practices Act, violations of Fair Credit Billing Act, and punitive damages.

{¶14} On November 15, 2022, DN Credit Union requested leave to file a responsive pleading, which the trial court granted and allowed it until December 15, 2022 to file. On December 6, 2022, DN Credit Union filed its second motion for leave to file a responsive pleading until January 3, 2023.

## Motion to Show Cause and Motion for Default Judgment

{¶15} On December 21, 2022, Joliat filed a motion to show cause, for attorney fees, and for default judgment. Joliat first argued that DN Credit Union was in violation of numerous court orders. As stated in its motion for temporary restraining order, answer,

and counterclaims, Joliat contended that DN Credit Union was in violation of the September 19, 2022 replevin order by taking items that were not listed in Schedule A. Joliat referenced two conferences with the trial court, for which there were no transcripts or journalized entries, where the trial court allegedly ordered DN Credit Union to limit the collateral to Schedule A and to provide an accounting of the recovered assets. For the property it had taken, Joliat alleged that DN Credit Union was not maintaining the property in a secure or safe location. Joliat next contended that DN Credit Union should be found in contempt of court because a DN Credit Union representative failed to attend the court-ordered mediation scheduled for November 30, 2022. Joliat finally argued that he was entitled to a default judgment on his counterclaims for DN Credit Union's failure to file a timely answer.

{¶16} On January 1, 2023, DN Credit Union filed a motion for leave to respond to Joliat's counterclaims. DN Credit Union filed its answer to Joliat's counterclaims on January 3, 2023. On January 23, 2023, the trial court granted DN Credit Union's motion for leave to respond to the counterclaims until January 24, 2023. DN Credit Union filed an amended answer on January 24, 2023.

{¶17} DN Credit Union filed a response to Joliat's show cause motion on February 16, 2023. In support of its motion, DN Credit Union filed the transcript of the October 12, 2022 TRO Hearing. DN Credit Union also attached copies of emails between Greg Grosklos, the former CEO of DN Credit Union, and Joliat discussing Joliat's credit situation. One of the attached exhibits showed that on September 22, 2022, Joliat sent an email to Jessica Cobbs that stated, "As of this message, I have provided access to Ben Bolog to catalog and remove everything from 7253 Whipple Ave. I have provided him

and surrendered the JLG boom lift, the 2017 Ford F-350, and the pizza truck. The keys are at the brewery and Ben Bolog has been provided them."

## Show Cause Hearing

{¶18} The matter came on for a March 2, 2023 hearing before the magistrate as to Joliat's December 21, 2022 motion, which included a motion to show cause and motion for default judgment. Joliat testified that he leased the property for Shale Brewing and the landlord ordered Joliat to vacate the premises by September 1, 2022, but extended the time to the end of September 2022. Joliat testified that in February, DN Credit Union provided Joliat with an inventory and photographs of the recovered assets. The inventory and photographs were prepared by Ben Bolog and his recovery company. Joliat presented Exhibit K that highlighted the recovered items that were on Schedule A. Joliat presented Exhibit L, which was a list he compiled from memory as to the items that were recovered but did not appear on the inventory prepared by Ben Bolog and/or Schedule A. The recovered Ford F-350 truck did not appear on any of the lists, but at the hearing, Joliat testified he did not contest DN Credit Union's seizure of the Ford F-350 truck, even though he initially argued it was improperly recovered.

{¶19} Ben Bolog of FAB Transport and Recovery testified at the hearing. He met with Joliat three times. The first time Bolog met Joliat was at Bolog's business office. Jessica Cobbs arranged the meeting to see if Bolog could assist Joliat with financing outside of DN Credit Union. The second time Bolog met with Joliat was after Joliat had closed Shale Brewing and Jessica Cobbs told Bolog that Joliat might be interested in selling assets. Bolog and Joliat met at Shale Brewing to look at the assets, but no sales were made. The third time Bolog met with Joliat was in Bolog's capacity as a recovery

agent for DN Credit Union. Bolog was provided with the September 19, 2022 replevin order on September 20th or 21st. Bolog testified that Jessica Cobbs told him to take everything that had to do with the brewery system and Shale Brewing. On September 23, 2022, Bolog met with Joliat at Shale Brewing to get the door code to the facility. Joliat was removing assets from the property that Joliat claimed were personal assets. Bolog testified that Joliat said that Jessica could "F" herself and the Bank could have it all. On September 24, 2022, Bolog showed Joliat a copy of the September 19, 2022 replevin order. Joliat denied that he was served with the court order or that Bolog showed him a copy of the court order.

{¶20} Bolog acknowledged the bicycles owned by Ernie's Bike Shop and recovered from Shale Brewing. He stated that the bicycles were separated from the recovered assets and would be released to the proper owners upon a court order. At the time of the recovery, Joliat had placed stickers on eight items he stated belonged to him. Those eight items were at Bolog's facility but separated from the inventoried assets.

{¶21} Joliat argued that Bolog did not properly secure the assets after their recovery, demonstrating with photographic evidence. Bolog testified as to the unusually short recovery period and subsequently, all recovered assets were inventoried, photographed, and moved to two secure storage facilities where they remained locked, secured, and protected from the elements. Bolog also testified that he would find assets placed outside the door of the Shale Brewing location. Joliat testified that he returned assets to the business and left them so he would not have contact with the recovery agents.

{¶22} On March 6, 2023, the magistrate issued her decision, recommending dismissal of Joliat's motion for contempt. The trial court approved and adopted the magistrate's decision. The magistrate first noted that while Joliat alleged several violations, including (1) DN Credit Union's failure to follow the trial court's orders as to seizure and storage of the property, (2) DN Credit Union's failure to participate in mediation, and (3), DN Credit Union's failure to timely answer Joliat's counterclaim, Joliat only presented evidence and argument at the show cause hearing as to Alleged Violation #1. The magistrate accordingly declined to address the second and third alleged violations based on Joliat's failure to present any evidence on those claims.

{¶23} The magistrate further noted that Joliat did not specify the type of contempt or sanction he was pursuing against DN Credit Union, either civil or criminal contempt. The magistrate analyzed the matter under both civil and criminal contempt. The magistrate found that upon the record, Joliat did not meet his burden under either standard of proof.

{¶24} Joliat filed objections to the magistrate's decision, arguing the magistrate used the incorrect standard of review for contempt and disputing the finding that Joliat voluntarily surrendered the assets. On March 27, 2023, the trial court overruled the objections.

**Summary Judgment**

{¶25} On July 14, 2023, DN Credit Union filed a motion for summary judgment on all of Joliat's counterclaims. In support of its motion, DN Credit Union filed the transcripts of the TRO hearing and motion to show cause hearing, and the exhibits DN Credit Union had previously used to respond to other motions.

{¶26} Joliat filed his response to the motion for summary judgment on August 11, 2023. The five-page response to the motion for summary judgment did not address any issues of law as to his ten counterclaims. Rather, Joliat argued that DN Credit Union did not meet its evidentiary burden under Civ.R. 56 to show there was no genuine issue of material fact.

{¶27} DN Credit Union filed its reply on August 18, 2023.

{¶28} On September 12, 2023, the trial court granted DN Credit Union's motion for summary judgment as to Joliat's ten counterclaims. In a comprehensive and thoroughly analyzed thirty-one-page judgment entry, the trial court found as to each counterclaim that DN Credit Union was entitled to judgment as a matter of law. The trial court first found that evidence presented by DN Credit Union in support of its motion for summary judgment was permissible under Civ.R. 56. The trial court next analyzed each of Joliat's ten counterclaims to find in favor of DN Credit Union.

### Voluntary Dismissal and Appeal

{¶29} On September 14, 2023, DN Credit Union filed a Civ.R. 41(A) notice of its voluntary dismissal of its claims against Joliat without prejudice.

{¶30} Joliat filed his notice of appeal on October 12, 2023.

### ASSIGNMENTS OF ERROR

{¶31} Appellants raise three Assignments of Error:

I. THE COURT ERRED IN GRANTING SUMMARY JUDGMENT ON CONVERSION BECAUSE PLAINTIFF DID NOT AFFIRMATIVELY DEMONSTRATE THAT DEFENDANTS WERE NOT DAMAGED.

II. THE COURT ERRED IN DENYING DEFENDANTS' MOTION FOR DEFAULT JUDGMENT.

III. THE COURT ERRED IN DENYING DEFENDANTS' MOTION TO SHOW CAUSE AND FOR ATTORNEY FEES.

**ANALYSIS**

{¶32} For ease of analysis, we address Joliat's Assignments of Error out of order.

**Default Judgment**

{¶33} In his second Assignment of Error, Joliat argues the trial court erred in denying his motion for default judgment on his counterclaims due to DN Credit Union's failure to file a timely answer. We disagree.

{¶34} Joliat filed his answer and counterclaims on October 14, 2022. Joliat contends the answer to his counterclaims was due on November 15, 2022. On November 15, 2022, DN Credit Union filed a motion for leave to respond until December 15, 2022, which the trial court granted. On December 6, 2022, DN Credit Union filed a second motion for leave to respond until January 3, 2023, which the trial court granted on January 23, 2023.

{¶35} On December 21, 2022, Joliat filed his motion requesting that DN Credit Union show cause as to why it should not be held in contempt for violation of court orders and for default judgment against DN Credit Union for failing to timely answer his counterclaims.

{¶36} DN Credit Union filed its answer on January 3, 2023 and an amended answer on January 24, 2023.

{¶37} On March 2, 2023, the magistrate held a hearing on Joliat's December 21, 2022 motions. The magistrate issued her decision on March 6, 2023. In the decision, the magistrate declined to address the default judgment. In his March 20, 2023 objections to the magistrate's decision, Joliat did not assign as error the magistrate's decision to not address his motion for default judgment.

{¶38} Joliat's second Assignment of Error raises multiple issues, but none in his favor. First, there is no dispute that DN Credit Union appeared in the action prior to Joliat's motion for default judgment. As such, Civ.R. 55(A) applies to this matter where notice and hearing must be given to the appearing but allegedly defaulting party before default judgment may be granted. *Lillibridge v. Pica*, 2021-Ohio-1480, ¶ 29 (5th Dist.) citing *Guiley v. Dewalt*, 2017-Ohio-4151 (5th Dist.); *Fifth Third Mortgage v. Fantine*, 2011-Ohio-4968 (5th Dist.). That hearing was held on March 2, 2023. At that hearing, Joliat presented no evidence as to his motion for default judgment. That lack of evidence resulted in the March 6, 2023 magistrate's decision where the magistrate declined to rule on the matter because Joliat failed to meet his evidentiary burden.

{¶39} Second, it is well settled that "[i]f a trial court fails to mention or rule on a pending motion, the appellate court presumes that the motion was implicitly overruled." *Batten v. Batten*, 2010-Ohio-1912, ¶ 82 (5th Dist.) quoting *Swinehart v. Swinehart*, 2007–Ohio–6174, ¶ 26 (5th Dist.). Joliat filed objections to the March 6, 2023 magistrate's decision but a review of his objections shows that he did not raise the magistrate's decision as to default judgment.

{¶40} As we explained in *Lemon v. Lemon*, 2011-Ohio-1878 ¶ 63–65 (5th Dist.):

Civ.R. 53(D)(3)(b)(iv) provides that "[a] party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusion * * * unless the party has objected to that finding or conclusion * * *." *See, e.g., Stamatakis v. Robinson* (January 27, 1997), Stark App.No. 96CA303; *Kademenos v. Mercedes–Benz of North America, Inc.* (March 3, 1999), Stark App. No. 98CA50.

Civ.R. 53(D)(3)(b)(iv) further provides: "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)."

However, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. *Dorsey v. Dorsey*, Fifth Dist. App. No. 2009-CA-00065, 2009-Ohio-4894; *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099, 1997-Ohio-401, at syllabus.

{¶41} Under the plain error review, we do not find this is an exceptional case. DN Credit Union appeared in the matter, filed motions for leave to answer that were granted by the trial court, and filed its answer. The trial court held a hearing pursuant to Civ.R. 55(A) and Joliat did not raise the issue.

{¶42} Based upon the failure of Joliat to object to the magistrate's decision as to the issue of default judgment, and that there was no plain error, we reject Joliat's second Assignment of Error and overrule the same.

## Contempt

{¶43} Joliat contends in his third Assignment of Error that the trial court erred when it found that DN Credit Union was not in contempt of the September 19, 2022 replevin order. We disagree.

### Standard of Proof: Civil or Criminal

{¶44} Joliat first argues the trial court used the incorrect standard of proof when it considered his motion to show cause as to why DN Credit Union should be held in contempt for violating the September 19, 2022 replevin order. Joliat argues he asked the trial court to find DN Credit Union in civil contempt for its failure to follow the September 19, 2022 replevin order. In the March 6, 2023 magistrate's decision, the magistrate analyzed the matter pursuant to the standards of proof for both criminal and civil contempt because the magistrate found it was unclear whether Joliat was requesting to coerce DN Credit Union to obey or to punish DN Credit Union for a violation of the order. Joliat objected to the magistrate's decision, arguing the magistrate used the incorrect standard of proof because he was only requesting relief in civil contempt. The trial court overruled the objections, finding the magistrate applied the correct standard of proof for both civil and criminal contempt to the evidence, finding that under either standard, Joliat failed to establish that DN Credit Union was in contempt.

{¶45} There are several types of contempt: direct, indirect, civil, criminal, and summary. The fundamental distinction between direct contempt and indirect contempt

lies in the location of the act of contempt -- whether it takes place within the presence of the judge, or elsewhere. *Meek v. Geneva*, 2017-Ohio-7975, ¶ 32 (5th Dist.) citing *A.P. Lee & Co., v. R.R. Bowler*, 10th Dist. Franklin No. 14AP-599, 2015-Ohio-2535, 2015 WL 3917570, ¶ 31.

{¶46} Civil contempt is defined as that which exists in failing to do something ordered to be done by the court in a civil action for the benefit of the opposing party therein. *Tincher v. Tincher*, 2020-Ohio-3352, ¶ 81 (5th Dist.) citing *Mohr v. Mohr*, 2017-Ohio-1044, ¶ 15 (5th Dist.), quoting *McKinney v. McKinney*, 5th Dist. Stark No. 2014CA00118, 2015 WL 1331886, ¶ 11–12 quoting *Beach v. Beach*, 99 Ohio App. 428, 431, 130 N.E.2d 164 (1955). The burden of proof for civil contempt is clear and convincing evidence. *Geary v. Geary*, 2015-Ohio-259, ¶ 34 (5th Dist.), citing *Flowers v. Flowers*, 2011-Ohio-5972 (10th Dist.). The party seeking to enforce a court order must establish, by clear and convincing evidence, the existence of a court order and the nonmoving party's noncompliance with the terms of that order. *Meek v. Geneva*, 2017-Ohio-7975, ¶ 33 citing *Ward v. Ward*, 2016-Ohio-5178, ¶ 41 (5th Dist.).

{¶47} The evidence must show beyond a reasonable doubt that a person is guilty of indirect criminal contempt. *Meek v. Geneva*, 2017-Ohio-7975, ¶ 34 (5th Dist.) citing *Gulbrandsen v. Summit Acres, Inc.*, 2016-Ohio-1550, ¶ 45 (4th Dist.) citing *Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297 at ¶ 11, citing *Gompers v. Buck's Stove and Range Co.*, 221 U.S. 418, 444, 31 S.Ct. 492, 55 L.Ed. 797 (1911). Additionally, in cases of indirect criminal contempt, the evidence must show "that the alleged contemnor intended to defy the court." *Id.* quoting *Midland Steel Prods. Co. v.*

*Internatl. U.A.W. Local 486*, 61 Ohio St.3d 121, 573 N.E.2d 98 (1991), paragraph two of the syllabus.

{¶48} Upon our review of the parties' motions, the evidence presented at the show cause hearing, the magistrate's decision, Joliat's objections to the magistrate's decision, and the judgment entry overruling the objections to the magistrate's decision, we find the trial court made no error as to the standard of proof on Joliat's show cause motion. The magistrate correctly cited both the civil and criminal contempt standards of proof in the decision and diligently applied both standards of proof to the evidence.

<u>No Civil Contempt of the September 19, 2022 Replevin Order</u>

{¶49} Joliat next argues the trial court erred when it found that DN Credit Union was not in contempt of the September 19, 2022 replevin order. A trial court's decision regarding contempt will not be reversed absent an abuse of discretion. *Tincher v. Tincher*, 2020-Ohio-3352, ¶ 82 (5th Dist.) citing *Gunawardena v. Gunawardena*, 2015-Ohio-2566, ¶ 1 (5th Dist.), citing *Beltz v. Beltz*, 2006-Ohio-1144 (5th Dist.). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶50} Joliat contends the evidence at the show cause hearing demonstrated that DN Credit Union violated the September 19, 2022 replevin order when it recovered more assets from the Shale Brewing business location than were listed on Schedule A. DN Credit Union argues that Joliat, through his emails and verbal communications with DN Credit Union and its agents, voluntarily surrendered the assets at the Shale Brewing business location to DN Credit Union. We examine the parties' arguments under our

limited abuse of discretion standard of review to determine whether the trial court erred in finding there was no civil contempt of the September 19, 2022 replevin order. There are two issues for this Court to consider: the evidence of what happened when the September 19, 2022 replevin order was enforced and the terms of the Promissory Note and Security Agreement. We discuss each issue in turn.

The Recovery of Assets

{¶51} DN Credit Union argues it complied with the September 19, 2022 replevin order because Joliat voluntarily surrendered assets, as supported by the words and actions of Joliat. Joliat claimed that if he voluntarily surrendered property to DN Credit, he did so under false pretenses because he did not understand Ben Bolog's role as a recovery agent. Ben Bolog met with Joliat three times, first as a possible financier arranged by Jessica Cobbs, second as a possible purchaser of the assets, and third as the recovery agent for DN Credit Union. On September 22, 2022, Joliat emailed Jessica Cobbs and stated that he had provided access to Ben Bolog to catalog and remove everything from the Shale Brewing business location. (Plaintiff's Exhibit 1). He further stated in the email that he provided Ben Bolog and surrendered the JLG boom lift, the 2017 Ford F-350, and the pizza truck. The evidence shows that as of September 22, 2022, Joliat understood Ben Bolog's role as recovery agent for DN Credit Union.

{¶52} In Joliat's motion for a temporary restraining order, Joliat stated that DN Credit Union impermissibly recovered the Ford F-350 because it was not listed on the Schedule A list of assets. At the show cause hearing, Joliat stated that while the Ford F-350 was not on the Schedule A list of assets, he did not object to DN Credit Union recovering the truck. Ben Bolog acknowledged that he was in possession of the bicycles

not owned by Joliat and referenced by Joliat in his motion for temporary restraining order, but those bicycles were moved to a separate space for the owner's repossession, once released by the court.

{¶53} At the show cause hearing, Joliat presented a list he had drafted from memory as to the items that were not on the Schedule A list and allegedly removed from the property. Ben Bolog presented the inventory list of removed assets and testified that the assets were inventoried, photographed, boxed, and moved to two secure storage facilities, where they remained locked, secured, and protected from the elements. One issue that was raised at the show cause hearing was the involvement of the landlord for the building where Shale Brewing was located. The landlord ordered Joliat to vacate the premises by September 1st but extended the time to the end of September. Ben Bolog testified that he told Joliat that he would take the property back to the way the landlord wanted it, an open room. When Ben Bolog met with Joliat to get the door codes, Joliat was marking his personal property with stickers but did not remove that property. Ben Bolog testified that he had taken those items and moved them to a separate space for Joliat's repossession, once released by the court.

<u>The Contract Language</u>

{¶54} We next examine the contractual language of the Promissory Note and Security Agreement. In his motion to show cause, Joliat focused only on the assets listed on Schedule A, arguing that the assets removed by DN Credit Union did not match the assets listed on Schedule A, therefore DN Credit Union was in contempt of the September 19, 2022 replevin order. The trial court noted that in his objections to the magistrate's decision, Joliat argued for the first time that pursuant to the language of the Promissory

Note and Security Agreement, and Ohio UCC statutory provisions, Joliat could not voluntarily surrender property not subject of a security interest to satisfy the Security Agreement. Joliat did not raise that argument in his motion to show cause or at the show cause hearing.

{¶55} There is no dispute that the parties are contractually bound by the Promissory Note and Security Agreement, which includes the Schedule A list of assets. The funds agreed to in the Promissory Note were secured by the Security Agreement. The Security Agreement states in pertinent part:

> **1. Definitions**. The following terms as used in this Agreement shall have the meanings set forth below:
>
> "Collateral" shall mean all of the property set forth in Exhibit A [Schedule A] attached hereto and made a part hereof, and all property of the same class and character acquired by Debtor subsequent to the date hereof, and all proceeds thereof, and all substitutions, replacements and accessions thereto.
>
> ***
>
> **2. Creation of the Security Interest**. Debtor hereby grants to Secured Party a security interest in all of the rights, title and interest of Debtor in and to the Collateral to secure the full and prompt payment and performance of all of the Obligations.
>
> **7. Rights and Remedies**. Upon the occurrence of an Event of Default, the Obligations shall immediately become due and payable in full without notice or demand. Secured Party shall have all rights and remedies provided by

the Uniform Commercial Code in effect in the State of Ohio on the date hereof. In addition to, or in conjunction with, or substitution for such rights and remedies, Secured Party may at any time and from and after the occurrence of an Event of Default hereunder:

(a) with or without notice to Debtor, foreclose the security interest created herein by any available judicial procedure, or take possession of the Collateral, or any portion thereof, with or without judicial process, and enter any premises where the Collateral may be located for the purpose of taking possession of or removing the same, or rendering the same unusable, or disposing of the Collateral on such premises, and Debtor agrees not to resist or interfere therewith;

There is no dispute that Joliat defaulted on the Promissory Note, entitling DN Credit Union to enforce the Security Agreement. Finally, there is no dispute that the trial court issued the September 19, 2022 replevin order, which referenced the Promissory Note, Security Agreement, and the Schedule A list of assets.

{¶56} Joliat contends the Security Agreement's definition of "collateral" limits DN Credit Union to the recovery of only the assets listed in Schedule A. He further cites R.C. 1309.102(A)(12) for the UCC definition of "collateral":

(12) "Collateral" means the property subject to a security interest or agricultural lien, including:

(a) Proceeds to which a security interest attaches;

(b) Accounts, chattel paper, payment intangibles, and promissory notes that have been sold; and

(c) Goods that are the subject of a consignment.

{¶57} DN Credit Union contends that regardless of the terms of the Promissory Note and Security Agreement, Joliat voluntarily surrendered the recovered assets to DN Credit Union. Joliat argued before the trial court and on appeal that as a matter of law, a debtor cannot voluntarily surrender assets beyond those identified as "collateral" to satisfy a secured debt. In its judgment entry overruling the objections to the magistrate's decision, the trial court stated, "Defendants have cited no legal authority to support this argument, and the Court is not persuaded that an individual cannot voluntarily turn over to a creditor whatever property he chooses, in order to satisfy a debt." (Judgment Entry, March 27, 2023). In his argument on appeal, Joliat has likewise failed to cite any case law or statute, beyond the definition of "collateral," to support his argument that a debtor is prohibited from voluntarily surrendering assets to satisfy a debt. The absence of law on this issue is telling. If we take Joliat's argument to its logical extreme, a debtor would be prohibited from satisfying a defaulted secured debt in any other manner than the recovery of the secured assets. We decline Joliat's invitation to develop law out of whole cloth as to whether a debtor can voluntarily surrender assets to satisfy a debt.

Clear and Convincing Evidence

{¶58} The trial court interpreted the terms of the Promissory Note and Security Agreement and weighed the evidence as to the parties' actions to find Joliat failed to establish by clear and convincing evidence that DN Credit Union was in contempt of the September 19, 2022 replevin order. As stated above, the standard of proof in a civil contempt action is clear and convincing evidence. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief

or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). "Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990). As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses.

{¶59} In this case, based on the terms of the Promissory Note and Security Agreement considered in conjunction with the evidence presented as to the actions of the parties during the recovery of the assets, we find there was sufficient evidence for the trial court to find DN Credit Union was not in contempt of the September 19, 2022 replevin order. The trial court did not abuse its discretion to deny Joliat's motion to show cause.

{¶60} Joliat's third Assignment of Error is overruled.

**Summary Judgment**

{¶61} Joliat argues in his first Assignment of Error that the trial court erred in granting summary judgment in favor of DN Credit Union on Joliat's counterclaim for conversion.[2] We disagree.

Conversion

{¶62} Joliat brought a claim of conversion in his counterclaim against DN Credit Union, arguing DN Credit Union removed and maintained control over personal and business property belonging to Joliat without the proper legal authority to do so. The tort of conversion is defined as "the wrongful exercise of dominion over property to the

_____

[2] Joliat brought ten counterclaims against DN Credit Union. DN Credit Union's motion for summary judgment argued it was entitled to judgment as a matter of law on all ten counterclaims. The trial court granted the summary judgment in favor of DN Credit Union on all ten counterclaims. In his appeal, Joliat only raises as error the trial court's judgment as to his counterclaim for conversion.

exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Heflin v. Ossman*, 2005-Ohio-6876, ¶ 20 (5th Dist.), quoting *Joyce v. General Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990). Thus, the elements required for conversion are: (1) a defendant's exercise of dominion or control; (2) over a plaintiff's property; and (3) in a manner inconsistent with the plaintiff's rights of ownership. *Id.*, citing *Cozmyk Ent., Inc. v. Hoy*, Franklin App. No. 96APE10–1380, 1997 WL 358816 (June 30, 1997). The Eighth District Court of Appeals uses different language to describe the same elements of the tort of conversion: (1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages. *6750 BMS, L.L.C. v. Drentlau*, 2016-Ohio-1385, ¶ 28 (8th Dist.); *Crockett Homes, Inc. v. Tracy*, 2024-Ohio-1464, ¶ 169 (7th Dist.); *Haddad v. Maalouf-Masek*, 2024-Ohio-1983, ¶ 59 (8th Dist.).

{¶63} The Eighth District has further delineated the elements of conversion if the defendant came into possession of the property lawfully so that the plaintiff must prove two additional elements * * *: (1) that the plaintiff demanded the return of the property after the defendant exercised dominion or control over the property; and (2) that the defendant refused to deliver the property to the plaintiff. *6750 BMS, L.L.C. v. Drentlau*, 2016-Ohio-1385, ¶ 28 (8th Dist.); *R & S Distrib., Inc. v. Hartge Smith Nonwovens, L.L.C.*, 2010-Ohio-3992, ¶ 23 (1st Dist.); *Crockett Homes, Inc. v. Tracy*, 2024-Ohio-1464, ¶ 169 (7th Dist.); *Accord Fid. & Deposit Co. of Maryland v. Farmers & Citizens Bank of Lancaster*, 72 Ohio App. 432, 434, (5th Dist.1943). The measure of damages in a conversion action is the value of the converted property at the time it was converted. *Tabar v. Charlie's Towing Serv.*, 97 Ohio App.3d 423, 427–428, (8th Dist.1994).

Standard of Review

{¶64} The matter in this case is before us upon a motion for summary judgment. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). As such, this Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

{¶65} Civ.R. 56 provides summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977).

{¶66} It is well established that the party seeking summary judgment bears the burden of demonstrating no issues of material fact exist for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment is delineated in *Dresher v. Burt*, 75 Ohio St.3d 280 at 293, 662 N.E.2d 264 (1996): "* * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's

claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ*, 37 Ohio St.2d 150, 309 N.E.2d 924 (1974).

{¶67} In support of its motion for summary judgment, DN Credit Union filed the transcripts of the TRO hearing and the show cause hearing, in addition to previously filed exhibits. Joliat's response to the motion for summary judgment argued only that DN Credit Union did not meet its evidentiary burden under Civ.R. 56 to show it was entitled to judgment as a matter of law. Joliat made no other argument as to his ten counterclaims that there were genuine issues of material fact for trial.

{¶68} The trial court found the transcripts of evidence were proper under Civ. R. 56(C). Civ.R. 56(C) states in pertinent part, "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, *transcripts of evidence*, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law." (Emphasis added.) The trial court determined that DN Credit Union met its evidentiary burden under Civ.R. 56 to point to some evidence demonstrating that Joliat could not support his claim for conversion. Upon our de novo review, we agree. DN Credit Union claimed that pursuant to the Promissory Note and Security Agreement, it was entitled to recover the Schedule A assets upon Joliat's undisputed default of the Promissory Note. DN Credit Union next pointed to the transcripts of evidence from the TRO hearing and show cause hearing to show that DN Credit Union lawfully obtained possession of the property and that Joliat voluntarily surrendered the allegedly converted property.

{¶69} The trial court next found that Joliat failed to meet his reciprocal burden under Civ.R. 56:

In response, Defendants contend that the Court cannot rely upon such testimony (an argument this Court has already rejected), but Defendants fail to point to any evidence in the record (nor do they produce any evidence by affidavit or otherwise) demonstrating the required elements of conversion. Even if the Court found a genuine issue of material fact regarding the allegation of voluntary surrender, Defendants have failed to produce evidence of other remaining elements of the claim, including damages.

* * *

Defendants have produced no evidence, nor made any argument, that would allow their conversion claim to remain viable in light of Plaintiff's lawful repossession of the Collateral.

(Judgment Entry, Sept. 12, 2023). The trial court therefore found that Joliat failed to meet his reciprocal burden under *Dresher* when he rested upon the mere allegations or denials of his pleadings, not setting forth any specific facts showing there is a genuine issue for trial. We reach the same conclusion based on our de novo review of the motion for summary judgment and Joliat's response to the motion for summary judgment. Joliat failed to meet his *Dresher* and Civ.R. 56(E) burden to set forth specific facts showing there was a genuine issue for trial on the counterclaim of conversion. Reviewing this matter in a light most favorable to the non-moving party, we agree with the trial court that summary judgment on the counterclaim of conversion is appropriate.

{¶70} Joliat's first Assignment of Error is overruled.

## CONCLUSION

{¶71} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, P.J.,

Baldwin, J. and

King, J., concur.